[No. S067271. July 17, 2000.]

ROBERT SNUKAL, Plaintiff, Cross-defendant and Respondent, v. FLIGHTWAYS MANUFACTURING, INC., Defendant, Cross-complainant and Appellant.

## COUNSEL

Akre, Bryan & Chang, Ronald A. Selgrath and Geoffrey L. Bryan for Defendant, Cross-complainant and Appellant.

Law Offices of David B. Bloom, David B. Bloom, James E. Adler; Sandra Kamenir; and Peter O. Israel for Plaintiff, Cross-defendant and Respondent.

Heller, Ehrman, White & McAuliffe, Steven O. Weisse; Wilson Sonsini Goodrich & Rosati, Meredith S. Jackson; Rodriguez, Horii & Choi, Albert R. Rodriguez; Sheppard, Mullin, Richter & Hampton, John D. Berchild, Jr.; Brobeck Phleger & Harrison, George A. Hisert; McCutchen, Doyle, Brown & Enersen, Henry D. Evans, Jr.; Latham & Watkins, Linda Schilling; Hoffman, Finney & Klinedinst, William P. Hoffman, Jr.; Law Offices of Francis Mintz, Francis Mintz, O'Melveny & Meyers and R. Bradbury Clark as Amici Curiae.

## OPINION

**GEORGE, C. J.**—The lessor of a personal residence filed this action in the municipal court against the lessee, a corporation, alleging breach of a written lease agreement executed by the president of the corporation. Following judgment in favor of the lessor in the municipal court, and affirmance in the appellate department of the superior court, the Court of Appeal directed that the case be transferred to itself in order to resolve a single issue of statutory construction pursuant to its authority under Code of Civil Procedure section 911 "to secure uniformity of decision or to settle important questions of law." Contrary to the conclusion reached by the appellate department, the Court of Appeal determined that Corporations Code section 313, which precludes a corporation from challenging an agreement based upon lack of authority when the agreement has been executed on behalf of a corporation by specified corporate officers, was inapplicable to the lease agreement here in question. The Court of Appeal then directed that the case be remanded and the remittitur transmitted to the appellate department of the superior court in order to permit that court to determine whether, instead, the lease agreement was binding upon the corporation under traditional, common law contract doctrine.

Initially we determine whether, pursuant to Code of Civil Procedure section 911 and California Rules of Court, rules 62 and 63,[1] providing that the Court of Appeal may order transfer of a case from the appellate department of the superior court to itself for hearing and decision "in order to secure uniformity of decision or to settle important questions of law," the Court of Appeal is authorized to decide only a limited issue or selected issues that are not dispositive of the case it has transferred. In connection with that question, we also determine whether, pursuant to rule 68, requiring the Court of Appeal to issue and transmit the remittitur to the court from which the appeal originally was taken (with an exception not applicable herein), the Court of Appeal may order transmittal of the remittitur to the appellate department of the superior court to decide the issues remaining on appeal. We conclude that under the terms of the current statute and rules of court, the Court of Appeal is not authorized to decide selected issues that are not dispositive of the appeal. Accordingly, the Court of Appeal is required to decide the issues necessary to resolution of the appeal and thereafter to transmit the remittitur to the municipal court (or, in the instance of a limited civil case tried in a unified superior court, to transmit the remittitur to the superior court).

In addition, we interpret Corporations Code section 313, which provides that a contract entered into between a corporation and another person, "when

---

[1]All references to rules are to the California Rules of Court.

signed by the chairman of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation," is binding upon the corporation even if the signing officers in fact lack authority to enter into the contract, so long as the other person does not have actual knowledge of that lack of authority. Contrary to the determination of the Court of Appeal, we conclude that under Corporations Code section 313 a contract is binding upon a corporation when an individual who in fact occupies the office of president, chief financial officer, *and* secretary of a corporation, executes a contract on behalf of the corporation, even when the contract expressly identifies the individual solely as its president. Accordingly, the judgment of the Court of Appeal, reversing the judgment of the appellate department of the superior court and remanding the case to that court, is reversed.

## I

In October 1992, plaintiff Robert Snukal leased a residence he owned in Malibu, California, to defendant Flightways Manufacturing, Inc. (hereafter, Flightways) for a two-year term commencing in November 1992. The residence was to be occupied by Kirt Lyle, who at that time was president, chief financial officer, and secretary of Flightways. On behalf of Flightways, Lyle alone executed the lease agreement, designating his title as president, without indicating that he also was chief financial officer and secretary of the corporation.

Within several months of the commencement of the lease term, Flightways was in arrears in its monthly rent payments, and in September 1993, plaintiff sent Flightways a notice to pay rent or quit. Lyle vacated the premises approximately one year after the inception of the lease term. Plaintiff commenced the present action, seeking recovery of past due rents, payment of future rents according to the terms of the lease, and other relief. In its answer to the complaint, Flightways denied that Lyle was authorized to enter into the lease agreement on its behalf. Flightways filed a cross-complaint alleging that it had not authorized Lyle to enter into the lease agreement on its behalf, and seeking relief in the amount of the monthly rent payments previously made.

The parties stipulated to trial by the court. Plaintiff testified that he personally did not meet with Lyle or Flightways and that the lease transaction was conducted through real estate brokers. Plaintiff was unaware of Lyle's actual interest in Flightways. Plaintiff's secretary received and deposited certain rent checks bearing the name "Lyle Kirtisine" rather than Flightways, but most of the rent checks received were issued on an account bearing the name "Flightways Manufacturing, Inc."

A member of its board of directors testified that Flightways did not authorize Lyle to enter into the lease agreement, and in fact was attempting to reduce its expenses during the period in which Lyle executed the agreement on its behalf. Although Flightways's monthly bank statements clearly reflected the checks (numbered in a sequence distinct from that of most of the checks written on the corporate bank account) written by Lyle on Flightways's bank account to pay the monthly rent for the residence, Lyle's duties also included the preparation (based upon those records) of the monthly corporate financial statements that were examined by the board of directors. At one point, in order to determine the reliability of the financial records, the board of directors employed an accounting firm to review the company's financial statements, but that firm did not detect anything unusual. Lyle told the board members that he was house-sitting for a girlfriend who lived in Malibu.

The municipal court determined that Flightways was bound by the lease agreement, noting that although Flightways had been the apparent victim of fraud on the part of Lyle, in view of the circumstance that a corporation reasonably might lease a residence on behalf of a corporate officer, Flightways was in a better position than plaintiff to detect and prevent the fraud. (See Civ. Code, § 3543.) The municipal court entered a judgment in favor of plaintiff in the amount of $22,300 for past due rent and attorney fees. The parties stipulated to the entry of judgment in favor of plaintiff on Flightways's cross-complaint.

Flightways filed an appeal in the appellate department of the superior court. Flightways contended that the evidence did not support the finding that plaintiff justifiably relied upon representations made by Flightways, that plaintiff was not entitled to rely upon Lyle's ostensible authority because Lyle did not act in the ordinary scope of business and received a personal benefit, that Civil Code section 3543 was inapplicable because Flightways was not negligent, and that Corporations Code section 313 did not apply because Lyle executed the lease agreement solely as president of Flightways.

The appellate department affirmed the judgment of the municipal court, concluding that Corporations Code section 313 was dispositive. The appellate department determined that Lyle, as president, chief financial officer, and secretary of Flightways, had "assertive authority" to enter into agreements on its behalf, and pursuant to that statute plaintiff, who did not have actual knowledge that Lyle lacked such authority, was entitled to rely upon Lyle's authority to act based upon Lyle's sole signature as president of the corporation.

Flightways requested the appellate department of the superior court to certify the case for review by the Court of Appeal. The appellate department

certified that transfer was necessary to determine "when the same person is president as well as secretary and chief financial officer of a corporation, whether it is necessary under . . . section 313 for the written contract to specifically reflect a corporate office designation in addition to that of President as signatory in order to bind the corporation under the written contract."

The Court of Appeal, concluding that its discretion to order transfer encompassed the discretion "to determine that only certain, limited aspects of a case will be heard and decided after the transfer," ordered the case transferred to decide the sole issue whether the "signature of a corporate president, standing alone, is sufficient to bind a corporation pursuant to section 313." The Court of Appeal reversed the judgment, holding that this statute applies only when the signatures of two corporate officers appear on the document, and therefore was inapplicable in the present case. Because the Court of Appeal did not consider whether, nonetheless, Flightways was obligated under the lease agreement pursuant to any common law doctrines, that court directed that the matter be remanded and the remittitur transmitted to the appellate department of the superior court to determine the merits of the remaining contentions.

We granted plaintiff's petition for review, in which he asserted that the Court of Appeal erred in concluding that Corporations Code section 313 was inapplicable to the lease agreement. On our own motion, we directed the parties to brief the following additional issues: (1) whether the Court of Appeal is authorized to grant review only of selected issues; and (2) whether, having reversed a judgment on an issue not dispositive of the case, it is authorized to transmit the remittitur to the appellate department of the superior court rather than to the municipal court.

## II

### A

As an initial matter, we determine whether, in a case originating in the municipal court that has been appealed to the appellate department of the superior court, the Court of Appeal, on its own order—or on certification by the appellate department of the superior court—in its discretion may direct that the case be transferred to it for hearing and decision in order to review and resolve selected issues that will not finally determine the appeal, and remand the case to the appellate department for resolution of the appeal. We conclude that under the provisions of the currently applicable statute and court rules, the discretion of the Court of Appeal to hear and decide such

cases does not include the discretion to select and review only an issue or issues not dispositive of the appeal.

■ A litigant in a case originating in the municipal court may not appeal as a matter of right to the Court of Appeal. (See *Bermudez v. Municipal Court* (1992) 1 Cal.4th 855, 857-858 [4 Cal.Rptr.2d 609, 823 P.2d 1210].) Instead, pursuant to Code of Civil Procedure section 911, such review is discretionary. At the time the Court of Appeal ordered the present case transferred to itself, that statute provided: "A court of appeal may order any case on appeal within the original jurisdiction of the municipal and justice courts in its district transferred to it for hearing and decision as provided by rules of the Judicial Council when the superior court certifies, or the court of appeal determines, that such transfer appears necessary to secure uniformity of decision or to settle important questions of law. [¶] No case in which there is a right on appeal to a trial anew in the superior court shall be transferred pursuant to this section before a decision in such case becomes final therein. [¶] A court to which any case is transferred pursuant to this section shall have similar power to review any matter and make orders and judgments as the superior court would have in such case, except that if the case was tried anew in the superior court, the reviewing court shall have similar power to review any matter and make orders and judgments as it has in a case within the original jurisdiction of the superior court." (*Ibid.*, as added by Stats. 1968, ch. 385, § 2, p. 815.)

The California Rules of Court, many of which implement statutory provisions dealing with court administration, practice, and procedure (Cal. Const., art. VI, § 6; see *People v. Hall* (1994) 8 Cal.4th 950, 956, 960 [35 Cal.Rptr.2d 432, 883 P.2d 974]; *Ferguson v. Keays* (1971) 4 Cal.3d 649, 656 [94 Cal.Rptr. 398, 484 P.2d 70]), include several rules implementing Code of Civil Procedure section 911. Rule 62 provides, in relevant part: "(a) A Court of Appeal may order a case transferred to it for hearing and decision when the superior court certifies or the Court of Appeal on its own motion determines from an opinion of the appellate department published or to be published in Advance California Appellate Reports that such transfer appears necessary to secure uniformity of decision or to settle important questions of law." Rule 63 provides, in relevant part: "(a) The superior court on application of a party or on its own motion may certify that the transfer of a case to the Court of Appeal appears necessary to secure uniformity of decision or to settle important questions of law. . . . [¶] (b) Any party may apply to the superior court for the certification of a case after judgment in that court. . . . No hearing shall be held on the application and the failure of the court to certify the case shall be deemed a denial of the application. [¶] . . . [¶] (e) The certification shall contain a brief statement setting forth any

conflict of decision (with citation of or reference to decisions creating the conflict, if there is no written opinion by the superior court) or important question of law to be settled and shall state whether there was a judgment in the superior court, and, if so, the nature and the date thereof."[2]

---

[2]In the Primary Election of June 2, 1998, the voters enacted Proposition 220, permitting voluntary unification of the municipal and the superior courts, and authorizing amendment of the state Constitution to reflect the related modification of trial and appellate court jurisdiction. (Cal. Const., art. VI, §§ 10, 11.) Thereafter, Senate Bill No. 2139 (1997-1998 Reg. Sess.) (hereafter Senate Bill 2139) was introduced. The Legislative Counsel's Digest describes it as follows: "The California Constitution provides for the establishment of superior and municipal courts, as specified, in each county. SCA 4 of the 1995-96 Regular Session, as approved by the voters on June 2, 1998, provides for the abolition of municipal courts within a county, and for the establishment of a unified superior court for that county, upon a majority vote of superior court judges and a majority vote of municipal court judges within the county. . . . [¶] This bill would make various statutory changes to implement and conform to the unification of trial courts pursuant to the constitutional amendment." (Legis. Counsel's Dig., Sen. Bill No. 2139.) Senate Bill 2139 was enacted effective September 28, 1998. (Stats. 1998, ch. 931.)

The statutes enacted or modified by Senate Bill 2139 provided for the replacement of the concept of municipal court jurisdiction with that of the "limited civil case," as part of the unification process authorized in 1998. "On unification of the trial courts in a county, all causes will be within the original jurisdiction of the superior court. Differentiation among superior court causes will be necessary, however, to preserve filing fees, economic litigation procedures, local appeal, and other significant procedural distinctions for matters that traditionally have been within the municipal court's jurisdiction. . . . [¶] . . . [¶] . . . In a county in which the courts have not unified, the municipal court has jurisdiction of limited civil cases. In a county in which the courts have unified, the superior court has original jurisdiction of limited civil cases, but these cases are governed by economic litigation procedures, local appeal, filing fees, and the other procedural distinctions that characterize these cases in a municipal court." (28 Cal. Law Revision Com. Rep. (1998) pp. 64-65, fn. omitted; 2 Witkin, Cal. Procedure (2000 supp.) Courts, § 248A, pp. 48-49.) Subject to other criteria, in general a case is deemed a limited civil action when the amount in controversy does not exceed $25,000. (Code Civ. Proc., §§ 85, 86.) (At the same time, the Penal Code was amended to reflect the jurisdiction of the appellate division of the superior court over appeals in misdemeanor and infraction cases. (See Pen. Code, § 1466.))

Among the statutes amended to effectuate the unification of the municipal and the superior courts, Code of Civil Procedure section 77 was modified to provide, in relevant part: "(a) In every county and city and county, there is an appellate *division* of the superior court . . . . [¶] . . . [¶] (i) A reference in *any other statute* to the appellate department of the superior court means the appellate division of the superior court." (Stats. 1998, ch. 932, § 11.5, eff. Jan. 1, 1999, italics added; see *id.*, ch. 932, § 43; ch. 931, §§ 21, 21.5.)

Code of Civil Procedure section 911 was modified to provide in relevant part: "A court of appeal may order any case on appeal to a superior court in its district transferred to it for hearing and decision as provided by rules of the Judicial Council when the superior court certifies, or the court of appeal determines, that the transfer appears necessary to secure uniformity of decision or to settle important questions of law. [¶] . . . [¶] A court to which any case is transferred pursuant to this section shall have similar power to review any matter and make orders and judgments as the appellate division of the superior court would have in the case . . . ." (Stats. 1998, ch. 931, § 103, eff. Sept. 28, 1998.)

Rules 62 and 63 were not modified in 1998. Instead, rule 100 was adopted, providing that references in all rules to the appellate department denote the appellate division, and that rules

In addition to the rules of court relating to the criteria for transfer pursuant to Code of Civil Procedure section 911 of a case originating in the municipal court, rule 28(b) provides that a Court of Appeal's denial of transfer of a case within the original jurisdiction of the municipal court is *not* reviewable by petition for review to the Supreme Court.

We begin our analysis by reviewing several of our decisions that emphasize the Court of Appeal's final authority to decide *whether* to order the transfer to itself of an appeal of a case originating in the municipal court. As we shall explain, subsequent Court of Appeal decisions, followed by the Court of Appeal in the present case, broadly interpreted the language in our opinions to authorize the Court of Appeal to determine, in its sole discretion, *which issues* to review in resolving such an appeal.

Thus, in *Schweiger v. Superior Court* (1970) 3 Cal.3d 507, 517, footnote 5 [90 Cal.Rptr. 729, 476 P.2d 97], we concluded that, because rule 28(b) prevented a party from petitioning this court for a hearing when the Court of Appeal declined to transfer a case originating in the municipal court, the Court of Appeal thereby was afforded "uncontrolled discretion" in deciding whether to transfer such a case. Accordingly, we determined in that case that the defendant, who received an adverse judgment in the municipal court, unsuccessfully appealed to the appellate department of the superior court, and did not obtain transfer by the Court of Appeal despite the appellate department's certification of an important issue, and having no right to petition this court for a hearing, properly sought relief by writ of mandate. (3 Cal.3d at pp. 510-511, 517-518.) In *Dvorin v. Appellate Dept.* (1975) 15 Cal.3d 648 [125 Cal.Rptr. 771, 542 P.2d 1363] (*Dvorin*), in affording the defendant relief by writ of mandate, we reiterated that the Court of Appeal has "uncontrolled discretion" in deciding whether to transfer a case from the appellate department of the superior court, and that authority did not exist to file a petition for hearing in this court based upon the denial of transfer, even though the appellate department of the superior court had exceeded its

applicable "to an appeal taken from a municipal court judgment to the appellate division of the superior court apply to an appeal taken from a unified superior court (trial court) judgment to the appellate division of the unified superior court (reviewing court)." (Adopted eff. June 3, 1998.)

It is apparent that the modifications thus made to the pertinent statutes and related rules of court regarding the designations and duties of the courts involved do not alter the basic authority of the Court of Appeal to order transfer when the superior court certifies or the Court of Appeal on its own motion determines "that such transfer appears necessary to secure uniformity of decision or to settle important questions of law." (Code Civ. Proc., § 911; see rules 62(a), 63(a).) Therefore, the conclusions reached concerning the nature of the Court of Appeal's authority pursuant to these provisions will apply equally to cases in which such transfer occurs following an appeal taken in a limited civil action to the appellate division of a unified trial court.

jurisdiction by entering summary judgment in favor of the plaintiff in the absence of a motion by the plaintiff, and itself had certified the issue for review. (*Id.* at pp. 650-651; see, e.g., *Barela v. Superior Court* (1981) 30 Cal.3d 244, 248, fn. 3 [178 Cal.Rptr. 618, 636 P.2d 582]; *Green v. Superior Court* (1974) 10 Cal.3d 616, 620-622 & fn. 5 [111 Cal.Rptr. 704, 517 P.2d 1168]; see also *People v. Gonzalez* (1996) 12 Cal.4th 804, 824-825 [50 Cal.Rptr.2d 74, 910 P.2d 1366] [noting that pursuant to rule 62(a), the Court of Appeal has discretionary review of misdemeanor convictions, and expressing reluctance to increase the role of that court in reviewing such convictions].)

·Thereafter, in *People v. Dupuis* (1992) 7 Cal.App.4th 696 [8 Cal.Rptr.2d 923] (*Dupuis*), the Court of Appeal ordered transfer of a case after the defendant was convicted of a misdemeanor in the municipal court and the appellate department of the superior court, having affirmed that conviction, certified the single issue whether the retrial of a prior conviction allegation was constitutionally prohibited. The Court of Appeal, noting *Dvorin*, rejected the defendant's attempt to renew other claims of trial court error. "In our view, 'uncontrolled discretion in deciding whether to transfer a case' *at all* necessarily includes the discretion to determine that only certain, *limited* aspects of a case will be heard and decided after the transfer. This interpretation of rule 62(a) is particularly consistent with the fact that '[c]ases are transferred to the Court of Appeal under rules 61-69, not primarily for the benefit of the party who lost in the superior court, but "to secure uniformity of decision or to settle important questions of law." ' (*Corcoran v. Universal Guardian Corp.* (1977) 72 Cal.App.3d 904, 910 [140 Cal.Rptr. 421].)" (*Dupuis, supra,* 7 Cal.App.4th at p. 700, italics in original.)

*Dupuis*'s broad interpretation of the intermediate appellate court's discretion to order transfer was followed by *Kaiser Foundation Health Plan, Inc. v. Aguiluz* (1996) 47 Cal.App.4th 302 [54 Cal.Rptr.2d 665], in which the Court of Appeal, having ordered transfer from the appellate department of the superior court to decide a particular issue—in the exercise of its discretion to limit review "to the discrete issue certified by transfer"—rejected the defendant's attempt to obtain review of additional claims. (*Id.* at p. 308, fn. 4.) Conversely, in *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139 [67 Cal.Rptr.2d 543], the Court of Appeal invoked its broad discretion in ordering transfer to decide issues *in addition* to the issue certified by the appellate department of the superior court. (*Id.* at p. 1149.)[3]

As we have seen, those prior Court of Appeal decisions have broadly interpreted the language in our decisions (which recognize that the decision

---

[3]In *People v. Gonzalez, supra,* 12 Cal.4th 804, 811, footnote 1, we observed that the Courts of Appeal have construed the statute and related rules of court to authorize the transfer of a case in order to decide only limited issues. In that case, the parties did not challenge the order

whether to order transfer of a case originating in the municipal court is insulated from review) also to authorize transfer, in the sole discretion of the Court of Appeal, for the purpose of deciding particular issues. **(1b)** None of those previous decisions of the Courts of Appeal, however, have considered the further issue, presented here, of whether the Court of Appeal may remand such a case to the appellate department of the superior court in order to address remaining issues that finally will resolve the appeal.

Accordingly, we now must decide whether, and to what extent, the Court of Appeal is authorized to select the issues that it will review upon its discretionary transfer of a case within the original jurisdiction of a municipal court. The prior decisions, in recognizing such authority, have relied in part upon the language in Code of Civil Procedure section 911 and rules 62 and 63 that enumerate two criteria—"to secure uniformity of decision or to resolve important questions of law." We observe that these criteria are nearly identical to the standards set forth in rule 29(a)(1), pursuant to which this court is authorized to grant review of a decision of a Court of Appeal "where it appears necessary to secure uniformity of decision or the settlement of important questions of law."

As we shall explain, the criteria of Code of Civil Procedure section 911 and rules 62 and 63 appear to be derived from rule 29(a)(1). As we also shall explain, the latter rule, defining the criteria pursuant to which this court may determine whether to grant review, has not been construed to encompass the authority that *this court* clearly possesses to review selectively issues not dispositive of an appeal. Instead, that authority is recognized in California Constitution, article VI, section 12, and rules 29.2 and 29.4. **(3), (1c)** Under the principle of statutory construction that legislation framed in the language of an earlier enactment on the same or an analogous subject that has been judicially construed is presumptively subject to a similar construction (*Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665]; *Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688 [8 Cal.Rptr. 1, 355 P.2d 905]), we interpret the similar language of Code of Civil Procedure section 911 and rules 62 and 63 as not, in itself, invariably including the authority to select issues that do not resolve an appeal. More generally, because there are no analogs in the constitutional provisions and rules relating to the discretionary authority of the Court of Appeal (to transfer a case originating in the municipal court) to the authority given *this court* by California Constitution, article VI, section 12, and rules 29.2 and 29.4, we hold that the Court of Appeal lacks such authority under the rules as currently framed.

of the intermediate appellate court limiting the issues to be decided, and we did not examine whether the Courts of Appeal have interpreted these provisions correctly. (*Ibid.*)

This court recently detailed the historical development of California Constitution, article VI, section 11, defining the appellate jurisdiction of the Supreme Court and the Courts of Appeal. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 93-110 [40 Cal.Rptr.2d 839, 893 P.2d 1160] (lead opn. of Kennard, J.) (*Powers*); see also *Leone v. Medical Board* (2000) 22 Cal.4th 660, 665-668 [94 Cal.Rptr.2d 61, 995 P.2d 191].) After 1879, the California Constitution also provided that the superior courts "shall have appellate jurisdiction in such cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law." (Cal. Const., former art. VI, § 5, adopted May 7, 1879 and repealed Nov. 8, 1966; all references to former art. VI are to this version.) The subject matter over which the superior court exercised its appellate jurisdiction has been limited "to the extent and mode which the legislature may prescribe." (*Sherer v. Superior Court* (1892) 94 Cal. 354, 355 [29 P. 716].) Nonetheless, an appeal taken to the superior court of a case within the subject matter of its appellate jurisdiction is, and has been, a matter of right. (*Chinn v. Superior Court* (1909) 156 Cal. 478, 480-481 [105 P. 580]; *Maxson v. Superior Court* (1899) 124 Cal. 468, 473-474 [57 P. 379]; *Associated Credit Exch. v. Barnett* (1927) 85 Cal.App. 255, 259 [259 P. 95].)

As we recently explained, in 1904 California Constitution former article VI was amended to create the then named District Courts of Appeal, define their appellate jurisdiction, and redefine the appellate jurisdiction of the Supreme Court. (*Powers, supra*, 10 Cal.4th 85, 103-104; *In re Page* (1931) 214 Cal. 350, 354-355 [5 P.2d 605]; *In re Wells* (1917) 174 Cal. 467, 470-471 [163 P. 657].) Under section 4 of that former article, the Supreme Court was given appellate jurisdiction in all superior court cases in equity (except those arising in the justice courts), in specified classes of cases at law, and in criminal cases resulting in a judgment of death. This court was authorized to transfer any case to or from the District Courts of Appeal. (*In re Page, supra*, 214 Cal. at pp. 354-355; *People v. Pacific Gas & Elec. Co.* (1914) 168 Cal. 496, 497 [143 P. 727].) Those courts were given appellate jurisdiction in all superior court cases at law seeking recovery or involving property of a minimum value of $300, in cases of forcible, unlawful entry and detainer except those arising in the justice courts, in other defined proceedings, and in non-death-penalty criminal cases. (*People v. Pacific Gas & Elec. Co.*, at pp. 497-498.) The superior courts retained appellate jurisdiction over matters within the original jurisdiction of the justice courts and other inferior courts. (See *Chinn v. Superior Court, supra*, 156 Cal. 478, 480-481.)

The 1904 amendments to former article VI did not specify whether a litigant, having appealed to a District Court of Appeal, thereafter also had a right to appeal to the Supreme Court. (Sosnick, *The California Supreme*

*Court and Selective Review* (1984) 72 Cal. L.Rev. 720, 727-728 (hereafter Sosnick).) Nor did these amendments specify whether the Supreme Court should apply the same degree of review regardless whether the subject matter falls within its original appellate jurisdiction or instead within that of the District Courts of Appeal.

This court proceeded to resolve those questions. In *People v. Davis* (1905) 147 Cal. 346, 347-349 [81 P. 718], we explained that one object of the constitutional scheme, as amended, "was to enable the supreme court to distribute the work in hand among the several courts having appellate jurisdiction in such a manner as to give to each, as nearly as possible, its due share, keep all of them continuously supplied, and thereby secure a speedy disposition of pending cases. For this purpose the power of this court to transfer any case of any character from one of these courts to another, or to the supreme court itself, is made absolute, and does not at all depend on the character of the case, or on the class of cases over which original appellate jurisdiction is given to the particular court. . . . [¶] Another object doubtless was to enable this court, in its discretion, to supervise and control the opinions of the several district courts of appeal, each of which is acting concurrently and independently of the others, and by such supervision to endeavor *to secure harmony and uniformity in the decisions, their conformity to the settled rules and principles of law, a uniform rule of decision throughout the state, a correct and uniform construction of the constitution, statutes, and charters, and, in some instances, a final decision by the court of last resort of some doubtful or disputed question of law.* These two objects cover the entire scope of the exercise of the power. . . . [¶] The existence of this power [of transfer] and its exercise for the purposes last stated do not give a right of appeal from the district courts of appeal to the supreme court, nor anything which is in legal effect equivalent thereto. . . . [¶] . . . The district courts of appeal are established for the purpose of ascertaining and enforcing, according to the rules of law, the particular right of each case committed to their arbitrament. The state has done its full duty in providing appellate relief for its citizens when it has provided one court to which an appeal may be taken as of right. There is no abstract or inherent right in every citizen to take every case to the highest court." (Italics added.)

In *Burke v. Maze* (1909) 10 Cal.App. 206 [101 P. 440], in an opinion filed on denial of the petition for hearing in the Supreme Court, reported at page 211, this court further emphasized that, in a case within the original jurisdiction of the District Court of Appeal and previously appealed directly to that court, the appellant was not entitled automatically to an additional hearing in the Supreme Court. "In such cases a rehearing in this court is granted only when error appears upon the face of the opinion of the appellate

court, or when a doubtful and important question is presented upon which we desire to hear further argument." (*Ibid.*) Thus, the concept was developed that, if the subject matter of a case was within the original appellate jurisdiction of a District Court of Appeal, its selection for additional review by the Supreme Court was discretionary and was based upon a need for uniformity of treatment of particular issues by the District Courts of Appeal or to address unresolved important issues of law.

We also concluded that, following resolution of a cause within the original appellate jurisdiction of the District Court of Appeal, our constitutionally authorized transfer of the cause to this court operated to *vacate* the decision of the District Court of Appeal. (*Knouse v. Nimocks* (1937) 8 Cal.2d 482, 483-484 [66 P.2d 438]; *People v. Clark* (1907) 151 Cal. 200, 203, 208 [90 P. 549]; see *Noel v. Smith* (1905) 2 Cal.App. 158, 160-161 [83 P. 167]; Sosnick, *supra,* 72 Cal. L.Rev. 720, 730-732.) We interpreted the term "cause" to denote "every matter decided by a district court of appeal, and operating as a final decision or disposition thereof in that court." (*In re Wells, supra,* 174 Cal. 467, 473; see *In re Rose* (2000) 22 Cal.4th 430, 450-451 [93 Cal.Rptr.2d 298, 993 P.2d 956]; Sosnick, *supra,* 72 Cal. L.Rev. at p. 732.) As a result, following such transfer, this court was required to resolve all legal issues raised on appeal, regardless whether all issues satisfied the criteria for review (securing uniformity of decision or settling significant disputed questions of law). (Sosnick, *supra,* 72 Cal. L.Rev. at pp. 732-733.)

In 1928, California Constitution, former article VI, section 4, was amended to confine the appellate jurisdiction of the Supreme Court to all cases in equity except those arising in the municipal or justice courts, all cases at law involving the title or possession of real estate, and death penalty cases. (*Powers, supra,* 10 Cal.4th 85, 104-105; see *McLean v. Freiberger* (1932) 215 Cal. 1, 1-2 [7 P.2d 1023].) The appellate jurisdiction of the District Courts of Appeal was broadened to include cases on appeal from the superior courts in all cases at law in which the superior courts have original jurisdiction, except those given to the Supreme Court and certain other specific proceedings, and to encompass criminal cases other than death penalty cases. (Cal. Const., former art. VI, § 4b, added Nov. 6, 1928; see Stats. 1961, p. xlii; see *Powers, supra,* 10 Cal.4th at pp. 104-105; *Bloom v. Municipal Court* (1976) 16 Cal.3d 71, 74, fn. 3 [127 Cal.Rptr. 317, 545 P.2d 229].) The superior courts retained original jurisdiction in all civil cases and proceedings except those within the original jurisdiction of the municipal and justice courts, and appellate jurisdiction in cases within the original jurisdiction of the municipal, justice, and other inferior courts. (Cal. Const., former art. VI, § 5; see *McLean v. Freiberger, supra,* 215 Cal. 1, 2; *Johnston v. Wolf* (1929) 208 Cal. 286, 288-289 [280 P. 980].)

As the constitutionally defined original appellate jurisdiction of the Supreme Court became narrower, and that of the District Courts of Appeal broader, subsequent decisional law stressed that when the subject matter of a case was within the original appellate jurisdiction of a District Court of Appeal, the judgment of that court was intended to be final. Additional review by this court—to secure uniformity of decision or resolve important questions of law—was purely discretionary. (*People v. Groves* (1935) 9 Cal.App.2d 317, 322-323 [49 P.2d 888].)

In 1943, the California Rules of Court, Rules on Appeal, were adopted. Rule 29(a)(1) embodied the criteria for review that we had enunciated in construing our constitutional authority to review cases within the original appellate jurisdiction of the District Courts of Appeal, as adopted in former Supreme Court Rules, rule XXX, section 6. (Sosnick, *supra*, 72 Cal. L.Rev. 720, 729-730 & fn. 56; Witkin, *New California Rules on Appeal* (1944) 17 So.Cal. L.Rev. 79, 232, 262.) Nonetheless, rule 29(a)(1) did not alter the established principle that this court's grant of a hearing vacated the opinion of the District Court of Appeal, thus requiring resolution of every issue. To ameliorate this burden, our court employed several alternatives to granting a hearing for a decision of the cause by the Supreme Court. (See Sosnick, *supra*, 72 Cal. L.Rev. at pp. 732-745.)

In 1960, a constitutional amendment was adopted extending the appellate jurisdiction of the District Courts of Appeal to all cases within the original jurisdiction of the municipal and justice courts, "to the extent and in the manner provided for by law." (Cal. Const., former art. VI, § 4e, adopted Nov. 8, 1960; see Stats. 1961, p. xliii.) Thus authorized to define and implement that grant of appellate jurisdiction, the Legislature enacted former section 988t of the Code of Civil Procedure, providing for discretionary transfer of a case to a District Court of Appeal when "necessary to secure uniformity of decision or to settle important questions of law." (Stats. 1961, ch. 693, § 13, p. 1934; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [20 Cal.Rptr. 321, 369 P.2d 937] [rule that court of inferior jurisdiction must follow decisions of court of higher jurisdiction is particularly applicable to superior court appellate department decisions, in view of the strictly limited appellate review under that provision].) Rules 62 and 63, employing the same language, and the portion of rule 28(b) prohibiting a petition for hearing from the denial of transfer by a District Court of Appeal of a case within the original jurisdiction of the municipal and justice courts, also were adopted, effective January 2, 1962.[4] Code of Civil Procedure section 911, stating the same criteria, subsequently replaced former section 988t. (Stats. 1968, ch. 385, § 2, p. 815.)

---

[4]Court of Appeal decisions rendered pursuant to the authority of those enactments review judgments of the municipal court. (See, e.g., *Dept. of Mental Hygiene v. O'Connnor* (1966)

In 1966, California Constitution, former article VI was repealed by the voters and a new article VI was enacted in order "to make the appellate jurisdiction of the Supreme Court 'discretionary, except in death penalty cases, thereby conforming to a long-standing practice of the Supreme Court to refer the types of cases enumerated in the existing Section 4 to district courts of appeal.' [Citation.]" (*Powers, supra,* 10 Cal.4th 85, 164 (dis. opn. of Lucas, C. J.).) Former article VI, sections 4, 4b, 4e, and 5 were placed within new article VI, section 11, in which " 'detailed references to instances of appellate jurisdiction,' except for this court's appellate jurisdiction in death penalty cases, were deleted as 'unnecessary.' [Citation.]" (*Bloom v. Municipal Court, supra,* 16 Cal.3d 71, 74; see *Powers, supra,* 10 Cal.4th 85, 164-165 (dis. opn. of Lucas, C. J.).)

Under California Constitution, present article VI, section 11, the redesignated Courts of Appeal were given appellate jurisdiction "when superior courts have original jurisdiction . . . and *in other causes prescribed by statute.* . . ." (Italics added.) Pursuant to the italicized phrase replacing the language of former section 4e, the Legislature may "enlarge the appellate jurisdiction of Courts of Appeal, and has done so by providing for hearing in such courts after decision on an appeal to the superior court in a case originating in the municipal court." (2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 173, p. 231; see *Powers, supra,* 10 Cal.4th 85, 165, fn. 44 (dis. opn. of Lucas, C. J.).) Thus, following an appeal as of right from a municipal or justice court to the appellate department of the superior court (art. VI, § 11; Code Civ. Proc., § 904.2), a further appeal might be taken to, and granted in its discretion by, the Court of Appeal as necessary to address important questions of law or to settle conflicts in the decisions of lower courts.

In a number of respects, the provision of a further level of discretionary review for a litigant who commences an action in the municipal court resembles that review available to a litigant who originates an action in the superior court, exercises his or her right to appeal to the Court of Appeal, and not having obtained the desired outcome at that appellate level, thereafter petitions this court to exercise its discretion to grant review. There is, however, a particular addition to the constitutional amendments and the rules defining the discretion of the Supreme Court to grant review, that has no analog in the constitutional amendment, statutes, and rules defining the discretion of the Court of Appeal to transfer to itself a case lying within the original jurisdiction of the municipal court.

As discussed above, it was recognized that a conflict existed between the language of rule 29(a)(1), purporting to grant review based upon the important or unsettled nature of particular issues, and the established constitutional

246 Cal.App.2d 24, 25, 29 [54 Cal.Rptr. 432]; *Coleman v. Ladd Ford Co.* (1963) 215 Cal.App.2d 90, 91, 94 [29 Cal.Rptr. 832].)

interpretation that our grant of review and transfer of a cause from the Court of Appeal in effect vacated the decision of that court and necessitated review of all issues of law. Therefore, it was recommended that the authority of this court to review issues selectively, be made explicit in the California Constitution. (Sosnick, *supra*, 72 Cal. L.Rev. 720, 745-751 [presenting alternatives by which the principle of selective review might be implemented].)

Accordingly, effective May 6, 1985, California Constitution, article VI, section 12, was amended to authorize this court to "review the decision of a court of appeal in any cause." (*Id.*, subd. (b); Sosnick, *supra*, 72 Cal. L.Rev. 720, 745-746 & fn. 141; Advisory Com. com., 23 pt. 1 West's Ann. Codes, Rules (1996 ed.) foll. rule 29.4, p. 318.) The Judicial Council was required to "provide, by rules of court, for the time and procedure for transfer and for review, including, among other things, provision for the time and procedure for transfer with instructions, *for review of all or part of a decision*, and for remand as improvidently granted." (Cal. Const., art. VI, § 12, subd. (c), italics added.) The subdivision authorizing this court to review the decision of the Court of Appeal avoided the previous automatic vacation of that decision that had imposed upon this court the obligation to review the judgment of the trial court. The subdivision directing the Judicial Council to provide procedural rules expressly authorized our selective review of particular issues rather than entire cases. (Advisory Com. com., 23 pt. 1 West's Ann. Codes, Rules, *supra*, foll. rule 29.4, p. 318; see Sosnick, *supra*, 72 Cal. L.Rev. 720, 745-746 [discussing the constitutional amendment as proposed].)

Also effective May 6, 1985, rules 29.2 through 29.9 were adopted. Rule 29.2 provides, in pertinent part: "(a) On review of the decision of a Court of Appeal, the Supreme Court may review and decide *any or all issues in the cause*." (Italics added.) Rule 29.4 provides, in pertinent part: "(a) On review of a Court of Appeal decision, unless another disposition is ordered, the judgment of the Supreme Court shall be that the judgment of the Court of Appeal is affirmed, reversed, or modified as the Supreme Court may order. [¶] (b) In any cause, the Supreme Court *may decide one or more issues and transfer the cause to a Court of Appeal for decision of any remaining issues in the cause*." (Italics added.) The Advisory Committee comment to rule 29.4(b) states in part: "Subdivision (b) clarifies the power of the Supreme Court to decide only those issues that it deems of major importance, and then transfer the cause to a Court of Appeal for final resolution. This is, in effect, a special form of transfer with instructions . . . . On review of a Court of Appeal decision, this procedure is most likely to be used when the original Court of Appeal opinion did not reach issues because it reversed on an overriding ground (e.g., statute of limitations) that the Supreme Court

determines to be erroneous." (Advisory Com. com., 23 pt. 1 West's Ann. Codes, Rules, *supra*, foll. rule 24.9, pp. 318-319.)

Following adoption of that amendment and those rules of court, this court in granting a petition for review frequently has accorded review of selected issues, remanding other unresolved issues to the Court of Appeal for decision. (See, e.g., *People v. Baird* (1995) 12 Cal.4th 126, 128 [48 Cal.Rptr.2d 65, 906 P.2d 1220]; *Bryant v. Blevins* (1994) 9 Cal.4th 47, 61 [36 Cal.Rptr.2d 86, 884 P.2d 1034]; *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1152 [17 Cal.Rptr.2d 608, 847 P.2d 574]; *People v. Woodward* (1992) 4 Cal.4th 376, 387 [14 Cal.Rptr.2d 434, 841 P.2d 954]; *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011]; *People v. Alfaro* (1986) 42 Cal.3d 627, 629-630 [230 Cal.Rptr. 129, 724 P.2d 1154], overruled on another ground in *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150].) Alternatively, pursuant to that authority, at times this court has decided additional issues, or has decided only selected issues without remanding to the Court of Appeal. (See, e.g., *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531-532 [53 Cal.Rptr.2d 789, 917 P.2d 628] [direction to vacate sentence rather than remand to Court of Appeal because record inadequate to decide remaining issues on appeal]; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230, fn. 4 [45 Cal.Rptr.2d 207, 902 P.2d 225] [retaining case to decide additional issues, pursuant to rule 29.2].)

When, on the other hand, the Court of Appeal exercises *its* discretion to transfer a case originating in the municipal court, no similar authorization, whether in the Constitution, statute, or rule of court, permits the Court of Appeal to review a particular issue and then direct the appellate department of the superior court to decide other issues necessary to the final disposition of the appeal. Thus, despite the common source and similarity in meaning of the language authorizing a Court of Appeal in its discretion to order a case transferred to it from the appellate department—to "secure uniformity of decision or to settle important questions of law"—and the language authorizing this court in its discretion to grant review of a case—"to secure uniformity of decision or the settlement of important questions of law"—the Court of Appeal, under the current statute and rules of court, does not have authority to review selected issues not dispositive of the appeal.

As we have explained, California Constitution, article VI, section 11, permits the Legislature to define the extent and exercise of the Court of Appeal's appellate jurisdiction over a case arising within the original jurisdiction of the municipal court. The Legislature has not authorized the Court

of Appeal to review issues selectively and then to require the appellate department of the superior court to decide other issues in order finally to dispose of the appeal. Thus, although the Court of Appeal has "uncontrolled discretion" in determining *whether* to transfer for decision a case within the original jurisdiction of the municipal court, once it has embarked upon that course it must afford "a final decision or disposition thereof in that court" (*In re Wells, supra*, 174 Cal. 467, 473)—that is, it must decide those appellate issues necessary to resolution of the case on appeal.

Our conclusion is confirmed by the statutes and rules governing the procedures for remittitur. These provisions contemplate that a Court of Appeal, having transferred to itself a case within the original jurisdiction of the municipal court, will order transmittal of the remittitur to the court from which the appeal originally was taken—the municipal court. As explained below, the provisions do not reflect a similar intent to permit final resolution of an appeal in a lower *appellate* court, as do the comparable remittitur provisions applicable to this court upon conclusion of its discretionary review.

Code of Civil Procedure section 43 authorizes the Supreme Court or the Courts of Appeal to affirm, reverse, or modify any judgment or order appealed from, to direct that the proper judgment or order be entered, or to direct that a new trial or further proceedings be had. That statute also directs that the judgment of the reviewing court "in appealed cases shall be remitted to the court from which the appeal was taken." ▬▬▬ Code of Civil Procedure section 912 provides: "Upon final determination of an appeal by the reviewing court, the clerk of the court shall remit to the trial court a certified copy of the judgment or order of the reviewing court and of its opinion, if any . . . ."[5]

Rule 25 directs in part that a remittitur shall issue after the final determination of (1) Supreme Court review of a decision of a Court of Appeal, or (2) any appeal. It further provides: "On Supreme Court review of a decision of a Court of Appeal the remittitur shall, unless otherwise ordered, be

---

[5]The appellate court clerk's issuance of the remittitur effects the transfer of jurisdiction to the lower court. (*Bellows v. Aliquot Associates, Inc.* (1994) 25 Cal.App.4th 426, 431 [30 Cal.Rptr.2d 723].) The reviewing "court has no appellate jurisdiction over its own judgments, and it cannot review or modify them after the cause has once passed from its control by the issuance of the remittitur" (*Isenberg v. Sherman* (1932) 214 Cal. 722, 724 [7 P.2d 1006]), although in very limited circumstances the remittitur may be recalled. (Rule 25(d).) At the same time, the terms of the remittitur define the trial court's jurisdiction to act. "The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled.' " (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1]; *Rice v. Schmid* (1944) 25 Cal.2d 259, 263 [153 P.2d 313].)

addressed to the Court of Appeal, accompanied by a second certified copy of the remittitur and by two certified copies of the opinion or order; and the Court of Appeal shall issue its remittitur forthwith after an unqualified affirmance or reversal of its judgment by the Supreme Court, or after finality of such further proceedings as are mandated by the Supreme Court. . . ." The quoted portion of that rule was adopted effective May 6, 1985, as part of the modification of the rules of court enacted in response to the constitutional amendment that expressly conferred upon the Supreme Court the authority selectively to review issues presented by a decision of a Court of Appeal.

Rule 68 governs issuance of the remittitur in a case transferred to the Court of Appeal following a judgment entered in the municipal court and an appeal entertained in the appellate department of the superior court. It provides, in relevant part: "The remittitur, upon issuance, shall be transmitted immediately, with a certified copy of the judgment and of the opinion, *to the court from which the appeal was originally taken*, except that when there was or, as a result of the appeal, will be a trial in the superior court, the remittitur shall be transmitted to that court. . . ." (*Ibid.*, italics added.)

It is evident that rule 68 does not contain any provision corresponding to that in rule 25, which directs the clerk of the Court of Appeal to address an original and a certified copy of the remittitur to the appellate department of the superior court so that it may issue its remittitur immediately or following further proceedings mandated by the Court of Appeal. The absence of a provision analogous to that provided for this court following the 1985 constitutional amendment, which authorizes us to review selectively decisions by the Court of Appeal and expressly directs that the rules of court be revised to reflect that change in authority, indicates that no similar authorization has been given to the Court of Appeal to review issues selectively and return the case to the appellate department for its determination of other issues presented by the appeal.[6]

In view of the constitutional amendment (Cal. Const., art. VI, § 12) and court rules expressly authorizing this court to review all or part of a decision

---

[6]Most Court of Appeal decisions that have ordered transfer pursuant to Code of Civil Procedure section 911 have resolved issues requiring no further appellate action. (See, e.g., *Reveles v. Toyota by the Bay, supra*, 57 Cal.App.4th 1139, 1149, 1158; *Kaiser Foundation Health Plan, Inc. v. Aguiluz, supra*, 47 Cal.App.4th 302, 308; *Dupuis, supra*, 7 Cal.App.4th 696, 700-701.) Consequently, pursuant to rule 68, the remittitur would have been issued to the municipal court in those cases. (Cf. *Babcock v. Antis* (1979) 94 Cal.App.3d 823, 831, 834 [156 Cal.Rptr. 673] [the appellate department of the superior court erred in granting the plaintiffs new trials in several actions rather than directing amendment of the complaints to allege damages below the jurisdictional limitation; the cases were remanded to the appellate department pursuant to rule 68(a) to decide the appeals on their merits].) We disapprove any language in those cases suggesting or implying that a Court of Appeal's "uncontrolled discretion" in deciding whether to transfer a case encompasses an uncontrolled discretion to

by a Court of Appeal, and the absence of analogous express authorization relating to a Court of Appeal's discretionary review, we conclude that the current statute (Code Civ. Proc., § 911) and rules of court (rules 62, 63, and 68) properly *cannot* be interpreted to authorize the Court of Appeal to exercise the kind of discretionary review that this court now undertakes, which includes the power—after deciding an important issue of law—to remand an appeal to the Court of Appeal for resolution of remaining issues.

Nonetheless, the applicable constitutional and statutory provisions themselves do not create insuperable obstacles to the establishment of a limited review-and-remand procedure in such cases. The current constitutional provision relating to the appellate jurisdiction of the Courts of Appeal does not explicitly preclude such a practice but rather provides simply that "courts of appeal have appellate jurisdiction when superior courts have original jurisdiction . . . *and in other causes prescribed by statute.*" (Cal. Const., art. VI, § 11, italics added.) The applicable statutory provision that authorizes a Court of Appeal to transfer an appeal from the appellate department or division "to secure the uniformity of decision or to settle important questions of law" (Code Civ. Proc., § 911), in turn, also does not expressly prohibit a limited review-and-remand procedure, but rather directs that a Court of Appeal may order transfer for hearing and decision "*as provided by rules of the Judicial Council.*" (*Ibid.*, italics added.) Although the language of the *current* rules (most clearly, rule 68) is inconsistent with a Court of Appeal's exercise of authority to remand an appeal to the appellate department for resolution of remaining issues, the language of section 911 does not appear to preclude the Judicial Council from revising the current rules of court to implement such a limited review-and-remand procedure. The council may do so if, upon examination of the purpose of the relevant statutory provisions, the council determines that, in furtherance of the effective administration of justice, it is appropriate to afford the Courts of Appeal a means to exercise the discretionary authority contemplated by section 911 in a manner that is analogous to that now available to this court in carrying out our comparable function of securing uniformity of decision and resolving important issues of law.

 In light of the conclusions set forth above, the Court of Appeal erred in proceeding under the assumption that it was authorized selectively to resolve only a nondispositive issue regarding the applicability of a particular statute and then to remand the case to the appellate department of the superior court—by issuing the remittitur to that court—to decide the remaining issues presented by the appeal.

---

narrow its scope of review to any degree that it decides—including review of only a threshold or limited issue that does not dispose of the appeal—and thereafter to remand the appeal to the appellate department or division of the superior court for actual resolution of the appeal.

At this juncture, we properly could remand the case to the Court of Appeal to complete its task on review and determine the remaining issues. Nonetheless, in the interest of judicial economy we shall review the Court of Appeal's determination that Corporations Code section 313 is inapplicable to the lease agreement at issue in this case, because we granted review on that issue, the parties have briefed it, and—unlike the Court of Appeal—this court *does* have discretionary authority to select issues for review that are, or may prove to be, not dispositive of the appeal.

## B

We now determine whether Corporations Code section 313 is applicable in view of the circumstances that Lyle, holding the corporate offices of president, chief financial officer, and secretary, executed the lease agreement purportedly on behalf of Flightways, but expressly identified himself in the agreement solely as its president. Plaintiff, seeking the protection afforded by section 313, contends that the provision is applicable when (as in the circumstances of the present case) a person holding corporate offices in each of the two series or categories of offices specified in the statute, executes an instrument on behalf of the corporation. (Plaintiff alternatively urges that the statute may apply whenever the president of a corporation executes an instrument on behalf of the corporation, even if the president holds no other corporate office.) Flightways, on the other hand, contends that the statute applies only when two officers holding the offices specified in the statute execute an instrument and *name the corporate offices held*—whether the requisite offices are held by the same person or by two persons. We conclude that the first interpretation offered by plaintiff is correct.

Corporations Code section 313 provides: "Subject to the provisions of subdivision (a) of section 208, any note, mortgage, evidence of indebtedness, contract, share certificate, initial transaction statement or written statement, conveyance, or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between any corporation and any other person, *when signed by the chairman of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation*, is not invalidated as to the corporation by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person that the signing officers had no authority to execute the same." (Italics added.)

"Our analysis commences with the premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citation.] ' "Our first step [in determining legislative intent] is to scrutinize the

actual words of the statute, giving them a plain and commonsense meaning." ' [Citations.] ' "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." ' [Citation.] 'Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.' [Citations.]" (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641]; Code Civ. Proc., § 1859.) "A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable. [Citations.]" (*Hughes, supra*, 17 Cal.4th at p. 776; 2A Sutherland, Statutory Construction (5th ed. 1992) § 45.02, p. 6.)[7]

██ Corporations Code section 313 is susceptible of several interpretations. Because the provision does not expressly require that each designated corporate office be represented by the signature of a separate individual, it may be construed to apply when a single individual who holds a corporate office listed in the first series—the chairman of the board, president, or any vice-president—*as well as* an office listed in the second series—the secretary, assistant secretary, chief financial officer, or assistant treasurer—executes the instrument on behalf of the corporation, regardless whether the individual specifies on the instrument itself all of the designated corporate offices he or she holds. If that interpretation is correct, then, even assuming the Legislature intended the statute to be applicable only when the instrument is executed by, for example, the president *and* another of the specified corporate officers, the statute would apply in the present case because Lyle actually was Flightways's president, chief financial officer, and secretary at the time he executed the lease agreement.

In the alternative, the provision may be interpreted to apply only when *both* an officer listed in the first series *and* an officer listed in the second series execute the agreement *and* name the corporate offices held on the instrument itself, whether the same individual holds both designated corporate offices or different individuals hold the designated corporate offices. If that interpretation is correct, the statute would not apply in the present case, because Lyle identified himself in the lease agreement merely as Flightways's president.

The provision also may be interpreted to apply *either* (1) when the chairman of the board or the president executes the instrument, specifying

[7]The use of the plural "signatures" in the title, and "signing officers" in the body of the statute, is not controlling. The General Provisions of the Corporations Code include the following sections: "Title, division, part, chapter, article, and section headings contained herein do not in any manner affect the scope, meaning, or intent of the provisions of this code." (Corp. Code, § 6.) "The singular number includes the plural, and the plural number includes the singular." (*Id.*, § 13; see also 2A Sutherland, Statutory Construction, *supra*, § 47.34, p. 274.)

the title held, *or* (2) when any vice-president, in combination with either the secretary, assistant secretary, chief financial officer, or assistant treasurer, executes the instrument, specifying their respective corporate titles. If that interpretation is correct, the statute would apply in the present case, because Lyle executed the lease agreement as Flightways's president.

None of the above described interpretations is unreasonable. The statute is sufficiently ambiguous to warrant our consideration of evidence of the Legislature's intent beyond the words of the statute. Accordingly, we appropriately may examine a variety of extrinsic aids, including the history and background of the statute and its apparent purpose " 'in an attempt to ascertain the most reasonable interpretation of the measure.' [Citations.]" (*Hughes v. Board of Architectural Examiners, supra*, 17 Cal.4th 763, 776.)

At common law, a corporate officer may have express authority to enter into an agreement on behalf of the corporation, granted by the board of directors or the corporate bylaws. (*Black v. Harrison Home Co.* (1909) 155 Cal. 121, 126-127 [99 P. 494]; see *McCormick v. Stockton etc. R.R. Co.* (1900) 130 Cal. 100, 104 [62 P. 267]; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 114, p. 613.) In the alternative, a corporate officer may have ostensible authority to enter into an agreement on behalf of the corporation if he or she "assumed and exercised the power in the past" with the apparent consent and acquiescence of the corporation. (*Black v. Harrison Home Co., supra*, 155 Cal. 121, 127; see *Fowler Gas Co. v. First Nat. Bank* (1919) 180 Cal. 471, 477 [181 P. 663]; *Newton v. Johnston Organ etc. Mfg. Co.* (1919) 180 Cal. 185, 189-190 [180 P. 7]; *Wells, Fargo & Co. v. Enright* (1900) 127 Cal. 669, 672 [60 P. 439].) In this setting, as is the case generally, ostensible authority requires justifiable reliance by a third party. It must be shown that "the business done by the supposed agent, so far as open to the observation of third parties, is consistent with the existence of an agency, and . . . , as to the transaction in question, the third party was justified in believing that an agency existed. [Citation.]" (*County etc. Bk. v. Coast D. & L. Co.* (1941) 46 Cal.App.2d 355, 366 [115 P.2d 988]; see *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399-400 [118 Cal.Rptr. 772, 530 P.2d 1084]; *Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 643 [39 Cal.Rptr. 731, 394 P.2d 571]; Civ. Code, § 2334.)

At common law, the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation. (*Mariposa Commercial etc. Co. v. Peters* (1932) 215 Cal. 134, 141 [8 P.2d 849].) " 'To properly prove a contract claimed to be binding on the corporation, it should be shown that it was made on its behalf by someone who had authority to act for it. It must be shown that the officer

was expressly authorized, or that the act was fairly within the implied powers incidental to his office, or that the corporation is estopped to deny his authority by reason of having accepted the benefit of the contract or otherwise.' " (*Memorial Hosp. Assn. v. Pac. Grape etc. Co.* (1955) 45 Cal.2d 634, 637 [290 P.2d 481, 50 A.L.R.2d 442].)[8]

For the party seeking to establish the validity of a contract at common law, formerly a corporate seal affixed to an agreement, although "not essential to the validity of such contract," provided presumptive evidence that the officer executing the agreement had the requisite authority to bind the corporation. (*City Street Improvement Co. v. Laird* (1902) 138 Cal. 27, 30-31 [70 P. 916]; see, e.g., *Mariposa Commercial etc. Co. v. Peters, supra,* 215 Cal. 134, 140-141 [when original lease and option were executed under corporate seal, burden was upon the party seeking specific performance of a lease modification executed by the corporate president without the corporate seal to prove authority of president to bind corporation]; *Fudickar v. East Riverside I. Dist.* (1895) 109 Cal. 29, 39 [41 P. 1024] [when a deed to property did not bear the corporate seal, the plaintiff in a quiet title action

---

[8]At common law, when the corporate officer's actual authority to execute the agreement has been established or is not in doubt, the circumstance that he or she does not specify the office held does not invalidate the agreement as to the corporation. In *Greve v. Taft Realty Co.* (1929) 101 Cal.App. 343 [281 P. 641], the court held that an agreement executed by various corporate officers, none of whom specified the office held, was binding upon the corporation. The court stated: "[The] cases sufficiently establish the law that, when the name of a corporation is attached to an agreement by its proper officers, it is unnecessary to attach to the names of the persons executing the agreement for the corporation the official designation of the one who signs his name, but that such official designation *may be otherwise established.*" (*Id.* at p. 350, italics added; see *Pacific Improvement Co. v. Jones* (1912) 164 Cal. 260, 263 [128 P. 404] [trial court properly admitted lease agreement executed by individual who did not designate his corporate title, when parole evidence established that he was general manager, had negotiated lease on behalf of corporation, and was known to be so acting by other party]; *Wells, Fargo & Co. v. Enright, supra,* 127 Cal. 669, 672 [immaterial that president and manager executed agreement solely as president when evidence demonstrated that corporation long had permitted president and manager to conduct general business without prior authorization by board of directors, and bylaws permitted manager to act as general agent in business matters and also gave him authority consistent with subject matter of agreement]; *Los Angeles L. Co. v. Los Angeles* (1895) 106 Cal. 156, 161 [39 P. 535] [immaterial that president and general manager executed a protest solely as president when evidence indicated that bylaws authorized general manager to supervise and control corporate affairs subject to control by board of directors].) Similarly, when an officer's apparent or ostensible authority to execute an agreement on behalf of the corporation has been established, the officer's omission of his or her official designation from the agreement does not negate the corporation's obligation under the agreement. (*Rauer v. Nelson & Sons* (1921) 53 Cal.App. 695, 699 [200 P. 809].)

was required to establish affirmatively that the corporate deed was authorized or ratified by resolution of board of directors entered on the records of the corporation].)[9]

That rule eventually was codified. Corporations Code, former section 801, subdivision (b), was adopted, specifically providing that the failure to affix a corporate seal does not affect the validity of any instrument. Former section 833 also was adopted, providing in pertinent part: "Contracts . . . and other instruments purporting to be executed by a corporation . . . and bearing a seal which purports to be the corporate seal . . . affixed to the instrument, are prima facie evidence that any such instrument is the act of the corporation, that it was duly executed and signed by persons who were officers or agents of the corporation acting by authority duly given by the board of directors, and that the seal is the duly adopted corporate seal of the corporation, and that it has been affixed as such by a person duly authorized so to do. . . ." (Stats. 1947, ch. 1038, § 833, p. 2326.)

"A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption." (Evid. Code, § 602.) Thus, Corporations Code former section 833 established a rebuttable presumption that the executing officers possessed the authority to bind the corporation. (*Associates Discount Corp. v. Tobb Co.*, *supra*, 241 Cal.App.2d 541, 547-548; see 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 86, p. 585; 2 Witkin, Cal. Evidence (3d ed. 1986) Documentry Evidence, § 919, pp. 879-880.) If an instrument bore the corporate seal, "the presumption of execution by the proper officers and pursuant to appropriate corporate authority was not overcome by the fact that a resolution authorizing the execution of such a corporate instrument did not appear in the records of the corporation." (1 Marsh et al., Marsh's Cal. Corporation Law (4th ed. 2000) § 10.15[B], p. 10-82, fn. omitted.) Nonetheless, the presumption *was* subject to rebuttal by affirmative evidence establishing the absence of actual authority, requiring the party seeking enforcement based upon ostensible authority to establish justifiable reliance upon the agreement. (See *Vaca Valley etc. R.R. v. Mansfield* (1890) 84 Cal. 560, 566 [24 P. 145]; *Meyer v. Glenmoor Homes, Inc.* (1966) 246 Cal.App.2d 242, 272 [54 Cal.Rptr. 786, 55 Cal.Rptr. 502, 115 P.2d 562] [under former statute defining prima facie evidence, presence of corporate seal created inference rather than presumption of corporate authority].)

---

[9]The presentation of a certified copy of the board of directors' resolution, authorizing the officer to execute the instrument, similarly created a "disputable presumption" of express authority to execute it. (*Purser v. Eagle Lake L. & I. Co.* (1896) 111 Cal. 139, 141-142 [43 P. 523]; *Associates Discount Corp. v. Tobb Co.* (1966) 241 Cal.App.2d 541, 547-548 [50 Cal.Rptr. 738].) The enactment of Corporations Code section 313 obviated this form of proof. (Legis Com. com., 23E West's Ann. Corp. Code (1990 ed.) foll. § 313, p. 192.)

The Corporations Code was revised significantly, however, effective January 1, 1977. (Stats. 1975, ch. 682, § 7, pp. 1516-1625; 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 6, pp. 516-517.) Although former section 801, subdivision (b), providing that the failure to affix a corporate seal does not affect the validity of an instrument, was continued in section 207, subdivision (a), former section 833, providing that the corporate seal is prima facie evidence of corporate authority, was repealed. (See 1 Marsh et al., Marsh's Cal. Corporation Law, *supra*, § 5.20, pp. 5-96 to 5-97.)

Instead, the revision included Corporations Code section 313, specifying that an instrument entered into by a corporation is not invalidated by any lack of authority on the part of the officers executing the instrument if (1) it has been executed by the designated officers, and (2) the other party does not have actual knowledge that the signing officers lacked authority to execute the instrument. The Legislative Committee comment to Corporations Code section 313 states that the purpose of the statute is "to allow third parties to rely upon the assertive authority of various senior executive officers of the corporation concerning the execution of any instrument on behalf of the corporation." (Legis. Com. com., 23E West's Ann. Corp. Code, *supra*, foll. § 313, p. 192.) "Such extra protection for third parties who deal with corporations is warranted since corporations necessarily act through agents." (*Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964, 971 [190 Cal.Rptr. 38].)

█ It is apparent that, if its criteria are met, Corporations Code section 313 precludes the invalidation of an instrument entered into by a corporation, *despite* the presentation of evidence demonstrating that the signing officers lacked authority to execute the instrument on its behalf. Thus, the statute provides a conclusive, rather than a merely rebuttable, evidentiary presumption of authority to enter into the agreement on the part of the specified corporate officers. (Cf. *Avery v. Kane Gas Light and Heating Company* (W.D.Pa. 1975) 403 F.Supp. 14, 16 [interpreting 15 Pa. Stat. § 2852-402, an analogous statute (see now, 15 Pa. Cons. Stat. § 1506, subd. (a)) to bind a corporation to promissory notes executed by a president and treasurer who designated his title solely as treasurer, "*in spite of* any internal by-laws or regulations of the corporation which would deny them the authority to bind the corporation . . . ." (italics added)]; *Collins v. Tracy Grill & Bar Corporation* (1941) 144 Pa. Super. 440 [19 A.2d 617, 621] [interpreting 15 Pa. Stat. § 2852-305, an analogous statute and the model for Corp. Code, § 313, to bind the corporation to a judgment note executed by a single individual occupying the offices of, and designating his offices as, president and treasurer, *even if* the corporate bylaws forbade the giving of a judgment note or of any note executed in that manner. (See Legis. Com. com., 23E West's Ann. Corp. Code, *supra*, foll. § 313, p. 192.)].)

In addition, Corporations Code section 313 applies so long as the other party does not have *actual knowledge* that the executing officers lack authority. Because the statute applies even when the other party should have, but does not have, actual knowledge of the officers' lack of authority, that party is relieved of the burden of establishing *justifiable* reliance upon the authority of the executing officers. Thus, this statute provides greater protection to the other party than does Corporations Code former section 833—once the presumption of the latter statute was rebutted by evidence of a lack of actual authority, the other party was required to establish ostensible authority, including a showing of justifiable reliance upon the apparent authority of the executing officers.

At the same time, Corporations Code section 313 leaves intact the other party's ability to assert the validity of an instrument under existing common law doctrines when the signatory or signatories do not hold the corporate offices specified in that statute. The comment of the Assembly committee advises that Corporations Code section 313 "does not create any negative inference that a document executed by others than the specified officers without actual authority is invalid; the concepts of the apparent authority and inherent agency power and other validating concepts, where applicable, remain effective to prevent a defense against enforcement of a contract on grounds of lack of authority." (Legis. Com. com., 23E West's Ann. Corp. Code, *supra*, foll. § 313, pp. 192-193; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 73-74 [276 Cal.Rptr. 130, 801 P.2d 373] [Legislature presumed not to renounce existing common law rules of law in enacting statute unless such intent clearly appears].)

As we have seen, when applicable Corporations Code section 313 provides a conclusive, rather than a merely rebuttable, evidentiary presumption of authority on the part of the specified corporate officers to execute the document in question on behalf of the corporation.[10] The statute also limits the burden of proof, insofar as the third party's knowledge is concerned, to a showing that he or she did not have actual knowledge of any lack of authority on the part of the signing officers. In so providing, the statute's purpose is to permit the third party to rely upon the assertive authority of the officers designated by the statute. At the same time, the third party whose agreement has been executed by a person who is not one of the specified officers is not prevented from utilizing common law theories to prove that a corporation is bound by the agreement.

---

[10]We stress that when Corporations Code section 313 is applicable and the corporation is prevented from seeking to invalidate the agreement by asserting a lack of authority to enter into it on the part of its signing officers, the corporation is not prevented thereby from asserting the invalidity of the agreement on an alternative theory other than lack of authority (e.g., fraud, mistake, failure of consideration).

Corporations Code section 313 appears designed to establish a level of formality that, if attained because the requisite number and type of officers have executed the subject instrument, affords the third party protection from subsequent efforts by the corporation to disavow its agents' authority in order to avoid its obligations pursuant to the agreement. The Legislature apparently considered that execution of an instrument on behalf of the corporation by two officers—one officer having general, operational responsibilities (i.e., the chairman of the board, president, or any vice-president) and one officer having recordkeeping or financial responsibilities (i.e., the secretary, assistant secretary, chief financial officer, or treasurer)—sufficed for that purpose. Corporations Code section 313 thus creates a "safe harbor" for persons entering into an agreement with a corporation: pursuant to that section, a corporation may not disclaim its authorization of those persons entering into an agreement on its behalf. If, on the other hand, an agreement is not entered into on behalf of the corporation by the specified officers, the third party still may seek its validation by invoking traditional common law theories, thereby incurring an increased burden of proof.

Consistent with that assessment of the statutory purpose, Corporations Code section 313 has been interpreted by several commentators to apply when an instrument is executed by *two* corporate officers, one from each of the following two groups: (a) the chairman of the board, president, or any vice-president; (b) the secretary, any assistant secretary, the chief financial officer, or any assistant treasurer. (See 1 Marsh et al., Marsh's Cal. Corporation Law, *supra*, §§ 5.20, p. 5-97, and 10.15[B], p. 10-81 [statute provides that any instrument signed by two specified corporate officers is binding on the corporation]; 1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1997) § 89.04, pp. 5-52.1 to 5-52.2 [instrument in writing is binding when signed by the chairman of the board, the president, or any vice president and also by any one of the other listed officers]; Friedman, Cal. Practice Guide: Corporations (The Rutter Group 1984) ¶ 6:276, p. 6-53.18 [same]; 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 86, p. 585 [statute "makes instruments signed by two specified corporate officers presumptively valid as to the corporation"]; *id.*, § 115, p. 615; 2 Witkin, Cal. Evidence, *supra*, Documentary Evidence, § 919, pp. 879-880.) We agree with the interpretation of the statute by those authorities.[11]

We do not believe that plaintiff's suggested alternative interpretation of Corporations Code section 313, applying the provision either when the

---

[11]We also compare the language of Corporations Code section 313 with nearly identical language in several statutes, serving the same purpose, set forth in various other chapters of that code pertaining to nonprofit or otherwise nonpublic corporations. Corporations Code sections 5214 (public benefit corporations), 7214 (mutual benefit corporations), 9214 (religious corporations), and 12354 (cooperative corporations) *all* contain the following: "Subject to the provisions of [a named statute applicable to that particular type of corporation], any note, mortgage, evidence of indebtedness, contract, conveyance or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between any

chairman of the board or the president singly executes the instrument, or when any vice-president, together with the secretary, any assistant secretary, the chief financial officer, or any assistant treasurer together execute the instrument, reflects a reasonable construction of the statute or promotes the apparent statutory purpose. That construction would create a "safe harbor" coextensive with each instrument executed by, for example, the corporation president. Because the statute absolves the third party of having to prove, as he or she would be required to at common law, that the president had actual or ostensible authority to bind the corporation to the instrument at issue, we construe the statute to apply only in the situation when at least two officers—one from each of the two series or categories of officers designated—execute the instrument.

We have concluded that Corporations Code section 313 applies only when a given instrument has been executed by one corporate officer designated in the first, "operational" category of officers, and one designated in the second, "financial" category of officers. The circumstances of the present case compel us to examine next whether that prerequisite is satisfied when an individual who in fact holds at least one of the designated corporate offices from each category executes an instrument but merely lists thereon *one* of his or her offices. The statute would not be applicable in the present case if additionally it were construed to require that an individual holding two of the specified corporate offices actually must set forth both offices held, or that two individuals, each holding one of the specified offices, must set forth their respective offices.

In determining the legislative intent underlying this enactment, "we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) Corporations Code section 312, also enacted during the 1975 revision of the Corporations Code, provides in part: "(a) A corporation shall have a chairman of the board or a president or both, a secretary, a chief financial officer and such other officers with such titles and duties as shall be stated in the bylaws or determined by the board and as may be necessary to enable it to sign instruments and share certificates. The president, or if there is no president the chairman of the board, is the general manager and chief executive officer of the corporation, unless otherwise

corporation and any other person, when signed by *any one of* the chairman of the board, the president or any vice president and *by any one of* the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation, is not invalidated as to the corporation by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person that the signing officers had no authority to execute the same." (Italics added.)

provided in the articles or bylaws. Any number of offices may be held by the same person unless the articles or bylaws provide otherwise."[12]

Thus, Corporations Code section 312 requires that a corporation designate, at minimum, a chairman of the board or a president, plus a secretary and a treasurer. At the same time, that statute permits the same individual to hold multiple corporate offices. Corporations Code section 313 does not contain any language directing that the signing officers be separate individuals, or that the signing officers specify the office or offices they hold. Accordingly, although Corporations Code section 313 applies only where corporate officers in each of the two designated series or categories execute the instrument, that statute, considered in light of Corporations Code section 312, is satisfied when one individual who in fact holds two of the specified corporate offices executes the instrument.[13] (See Friedman, Cal. Practice Guide: Corporations, *supra*, ¶ 6:276-1, pp. 6-53.18 to 6-53.19.)

That interpretation is supported by a decision construing the Pennsylvania statute from which Corporations Code section 313 was derived. In *Avery v. Kane Gas Light and Heating Company, supra*, 403 F.Supp. 14, 16, the federal district court interpreted 15 Pennsylvania Statutes section 2852-402 to bind a corporation to promissory notes executed by an individual who, although he was the corporation president and its treasurer, listed only his title as treasurer. (See *Collins v. Tracy Grill & Bar Corporation, supra*, 19 A.2d 617, 621; see also *Thermal Energy Concepts, Inc. v. Commissioner* (1993) 66 T.C.M. (CCH) 1368, 1371, fn. 6.)

In view of the statutory purpose, context, and derivation of Corporations Code section 313, we believe that the Legislature did not intend to limit the statute's application only to instances in which two corporate offices are set

[12]Former section 821 of the Corporations Code required that a corporation appoint a president, vice-president, secretary, and treasurer. The former section did not permit the same person to hold both the offices of president and secretary of the corporation. (Enacted by Stats. 1947, ch. 1038, § 821, p. 2323 and repealed by Stats. 1975, ch. 682, § 6, p. 1516, eff. Jan. 1, 1977.)

[13]Our conclusion that Corporations Code section 313 applies when a corporate officer holding at least one of the designated corporate offices in each series or category of offices executes an instrument on behalf of the corporation, even if he or she omits to record thereon both designated offices, also finds support in Corporations Code section 1502. Subdivision (a) of that statute makes a matter of public record the names and addresses of a corporation's chief executive officer, secretary, and chief financial officer, as part of the information required to be filed biennially with the Secretary of State. Although subdivision (g) of section 1502 expressly forbids construction of that statute "to place any person dealing with the corporation on notice of, or under any duty to inquire about, the existence or content of a statement filed pursuant to this section," nonetheless the statute effectively produces public information as to the actual identities of three primary officeholders of a given corporation, and this information may be relied upon by a third party even if a particular agreement does not list all of the offices held by those signing the agreement.

forth on the face of the instrument. Rather, the signature of one person alone is sufficient to bind a corporation, as long as he or she holds corporate offices in each of the two series or categories described in that statute. In the present case, therefore, because Lyle served both as Flightways's president and as its chief financial officer (and secretary), and because plaintiff did not have actual knowledge of any lack of authority on Lyle's part, the lease agreement was not invalidated by Lyle's lack of authority to enter into such an agreement on behalf of Flightways.[14]

## III

We conclude that under the currently applicable statute and court rules, when a Court of Appeal, in its discretion, has transferred to itself a case originating in the municipal court to secure uniformity of decision or to settle important questions of law, the Court of Appeal must exercise its authority in a manner that will provide a final resolution of the appeal without a remand to the appellate department or appellate division of the superior court. Accordingly, we conclude the Court of Appeal erred in issuing its remittitur to the appellate department of the superior court rather than to the municipal court from which the appeal originally was taken.

On the substantive issue presented, we conclude that the president's execution of the lease agreement was sufficient to bind the corporation pursuant to Corporations Code section 313, because, at the time he executed the agreement, the same individual also was the corporation's chief financial

---

[14]Plaintiff suggests that the limitation on certain actions imposed by Corporations Code section 208, subdivision (a) is consistent with his contention that the sole signature of the president, when that individual in fact holds at least two of the specified offices, is sufficient to bind the corporation. That statute provides: "No limitations upon the business, purposes or powers of the corporation or upon the powers of the shareholders, officers, or directors, or the manner of exercise of such powers, contained in or implied by the articles or by Chapters 18, 19 and 20 or by any shareholders' agreement shall be asserted as between the corporation or any shareholder and any third person, except in a proceeding (1) by a shareholder or the state to enjoin the doing or continuation of unauthorized business by the corporation or its officers, or both, in cases where third parties have not acquired rights thereby, or (2) to dissolve the corporation or (3) by the corporation or by a shareholder suing in a representative suit against the officers or directors of the corporation for violation of their authority." (*Ibid.*, fns. omitted.) The statute restricts third parties from questioning the manner in which the corporate directors have exercised their powers, unless the third parties fall within the enumerated categories, such as the state when it is seeking to enjoin the continuation of unauthorized business, or the corporation is being dissolved. (See *Dominguez v. Superior Court* (1983) 139 Cal.App.3d 692, 695 [189 Cal.Rptr. 5]; 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 115, p. 615 ["[L]imitations on the powers of officers may only be asserted between the corporation or a shareholder and a third party in specified proceedings."].) That statute does not differentiate among the types of officers whose exercise of power might be challenged in such a proceeding and therefore does not assist us in our interpretation of Corporations Code section 313.

officer and secretary. Thus, under section 313, Flightways is bound to the agreement that Lyle executed on its behalf.

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal with directions to affirm the judgment of the municipal court in favor of plaintiff.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.