Filed: 4/22/2015 Unmodified opinion attached

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| DRAKE KENNEDY, | B257446 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC522560) |
| v. | |
| BRIAN KENNEDY, et al., | MODIFICATION ORDER [NO CHANGE IN JUDGMENT] |
| Defendants and Appellants. | |

The opinion filed on April 20, 2015 is modified as follows:

On the last line of the footnote on page 1, "parts II (A), (B) and (D)" is to be deleted and replaced with "part III (C)."

_____        _____        _____
TURNER, P.J.                             KRIEGLER, J.                             GOODMAN, J. [†]

---

[*]     Pursuant to California Rules of Court, rules 8.1100(b) and 8.1110, this opinion is certified for publication with the exception of part III (C).

[†]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed: 4/20/15 Unmodified opinion

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| DRAKE KENNEDY, | B257446 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC522560) |
| v. | |
| BRIAN KENNEDY, et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County, Richard Edward Rico, Judge.  Affirmed.

Shartsis Friese, Arthur J. Shartsis, Mary Jo Shartsis, Richard F. Munzinger, Nicolas V. Saenz; Greines, Martin, Stein & Richland and Kent L. Richland for Defendants and Appellants.

O'Melveny & Myers, Daniel M. Petrocelli, Robert M. Schwartz, Jonathan Hacker and Molly M. Lens, for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1100(b) and 8.1110, this opinion is certified for publication with the exception of parts II (A), (B) and (D).

# I.  INTRODUCTION

Defendants, Brian Kennedy and, as to Skyline Outdoor Media LLC only, David Seyde, appeal from a May 13, 2014 order in favor of plaintiff, Drake Kennedy.[1]  The May 13, 2014 order denied defendants' motion to stay dissolution of a number of corporations and limited liability companies and appoint appraisers to permit a buyout to occur.  (Corp. Code,[2] §§ 2000, 17707.03.)  Defendants contend the trial court erred as a matter of law in refusing to order the stay, appraisal and buyout procedure in sections 2000 and 17707.03.  We affirm.

# II.  BACKGROUND

## A.  Complaint and Second Amended Cross-Complaint

Drake filed a complaint while Brian's operative pleading is the second amended cross-complaint.  Both pleadings allege extensive misconduct by the parties which are not directly pertinent to the controlling legal issues.  Given our resolution of the legal issues, we need not discuss the parties' mutual allegations and evidence of corporate misconduct.

Drake's complaint was filed against defendants on September 25, 2013.  In addition to Brian, Mr. Seyde and Skyline Outdoor Media LLC, named as defendants were:  Regency Outdoor Advertising, Inc.; Corona Outdoor, Inc.; Westminster Outdoor, Inc.; Virtual Media Group, Inc.; West Hollywood Properties LLC; and Kennedy Outdoor Advertising LLC.  As can be noted, other than Brian and Mr. Seyde, some defendants are corporations and others are limited liability companies.  According to the complaint,

---

[1]    Because they share the same surname, for clarity's purposes, we shall refer to Drake and Brian Kennedy by their first names.
[2]    Further statutory references are to the Corporations Code unless otherwise specified.

2

Drake and Brian each owned a 50 percent interest in what we will refer to as "the corporations": Regency Outdoor Advertising, Inc.; Corona Outdoor Advertising, Inc.; Westminster Outdoor, Inc.; and Virtual Media Group, Inc.

In terms of the limited liability companies, Skyline Outdoor Media LLC and West Hollywood Properties LLC, Drake and Brian held different interests. Drake and Brian held a 50 percent interest in West Hollywood Properties LLC. Drake and Brian each held a 40 percent interest in Skyline Outdoor Media LLC. Mr. Seyde held a 20 percent interest in Skyline Outdoor Media LLC. West Hollywood Properties LLC and Skyline Outdoor Media LLC will hereafter be referred to as the "limited liability companies." Collectively, the corporations and limited liability companies will be referred to as the "companies." Drake and Brian were each a director, officer, and shareholder or member of each of the companies. Mr. Seyde was a member of Skyline Outdoor Media LLC and held a senior management position in Regency Outdoor Advertising, Inc. Brian was the sole member of Kennedy Outdoor Advertising LLC.

The complaint alleges that Brian: stopped communicating with Drake about most business matters; restricted Drake's access to information and the books and records: looted and diverted corporate assets; refused to pay costs defending a lawsuit; stole valuable real estate located at the intersection of Sunset Boulevard and Queens Road from West Hollywood Properties LLP; and, with the assistance of Mr. Seyde, transferred the Sunset Boulevard and Queens Road property to Kennedy Outdoor Advertising LLC. Kennedy Outdoor Advertising LLC was an entity owned entirely by Brian. It is alleged Mr. Seyde, with Brian's assistance, directly competed with Regency Outdoor Advertising, Inc. in the outdoor advertising business. Further, it is alleged Brian and Mr. Seyde created Kennedy Outdoor Advertising LLC to compete with the corporations and West Hollywood Properties LLC.

Drake's complaint alleges causes of action against defendants collectively or individually: fiduciary duty breach; fraudulent concealment; aiding and abetting and conspiracy to commit fiduciary duty breach; aiding and abetting and conspiracy to

3

commit fraudulent concealment; quiet title; ejectment; director removal; inspection right violation; accounting; and declaratory relief. Depending on the claims, they are brought as derivative or direct actions. Drake's complaint also contains a cause of action for involuntary dissolution of the corporations and the limited liability companies. The involuntary dissolution claim seeks the appointment of a receiver to take possession of all of the companies' assets and an order requiring they be sold to a third party. All of defendants' alleged misconduct occurred prior to September 25, 2013. None of the claims in the involuntary dissolution cause of action are derivative in nature.

On July 14, 2014, Brian filed a second amended cross-complaint against: Regency Outdoor Advertising, Inc.; Drake and Stephanie Kennedy; Corona Outdoor Advertising, Inc.; Westminster Outdoor Inc; Virtual Media Group, Inc.; West Hollywood Properties LLC; and Skyline Outdoor Media, LLC. The second amended cross-complaint contains causes of action for: common counts; conversion; unjust enrichment; fiduciary duty breach; aiding and abetting and conspiracy to commit fiduciary duty breach; constructive fraud; imposition of a constructive trust; director removal; constructive trust imposition; "judicial dissociation" of Drake; promissory estoppel; and trade secret misappropriation. Some of the claims are direct while others are derivative in nature. The second cause of action seeks damages, "disgorgement for unjust enrichment," various judicial decrees and costs of suit and attorney fees.

B. Motion to Stay Dissolution and Appoint Appraisers and the Trial Court's Ruling

On January 28, 2014, defendants filed a motion to stay dissolution and appoint appraisers. The motion was brought pursuant to sections 2000 as to the corporations and 17707.03, subdivision (c) as to the limited liability companies. This would allow defendants to avoid dissolution by purchasing Drake's ownership interests in the companies. Mr. Seyde filed the motion to stay dissolution and appoint appraisers as to Skyline Outdoor Media LLC only. On February 14, 2014, Drake dismissed with

4

prejudice his involuntary dissolution cause of action. On May 13, 2014, defendants' motion to stay dissolution and appoint appraisers was denied. The trial court disagreed with defendants' contention that the invocation of their buyout rights was barred because of the dismissal of Drake's involuntary dissolution cause of action, "[T]he court finds that as a result of [Drake's] dismissal of the dissolution claim, the court lacks jurisdiction to consider defendants' motion for buyout under section[s] 2000 and 17707.03." The trial court ruled section 17707.03, subdivision (c)(6) did not apply because it was not operative until after Drake filed suit.

## III. DISCUSSION

### A. The Dismissal of Plaintiff's Cause of Action for Dissolution of the Corporations Renders the Statutory Buyout Provision Inapplicable

Defendants contend the trial court erred in denying their motion to stay dissolution and appoint appraisers under section 2000, subdivision (a). Defendants reason the statutory buyout procedure supplanted the dissolution action. We disagree.

Because this issue involves an issue of a statutory interpretation applied to undisputed facts, we exercise independent review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562; *Panakosta, Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 628 (*Panakosta*).) Our Supreme Court has explained: "When construing a statute, we look first to its words, '"because they generally provide the most reliable indicator of legislative intent." [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529-530.)" (Accord, *In re Ethan C.* (2012) 54 Cal.4th 610, 627; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) According to our Supreme Court: "'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain

5

meaning of the statute governs.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc.*, *supra*, 51 Cal.4th at p. 530; see *In re Ethan C.*, *supra*, 54 Cal.4th at p. 627.)

Section 2000, subdivision (a) provides: "Subject to any contrary provision in the articles, in any suit for involuntary dissolution, . . . the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the 'moving parties') at their fair value. The fair value shall be determined on the basis of the liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation. . . ."**3** Section 2000,

---

**3** Section 2000, subdivisions (b) through (d) state: "(b) If the purchasing parties (1) elect to purchase the shares owned by the moving parties, and (2) are unable to agree with the moving parties upon the fair value of such shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if such expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, . . . in the pending action[,] . . . shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties. [¶] (c) The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties. Any shareholder aggrieved by the action of the court may appeal therefrom. [¶] (d) If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section, or, in case of an appeal, as

6

subdivision (a) expressly provides the right to purchase the shares of a plaintiff is an alternative to an involuntary dissolution of a corporation. Section 2000, subdivision (a) applies to any suit seeking an involuntary dissolution. Under those circumstances, the purchasing shareholders "may avoid the dissolution of the corporation and the appointment of any receiver" by buying the plaintiff's shares. Nothing in section 2000, subdivision (a) provides for a buyout independent of a pending involuntary dissolution suit.

Here, Drake's involuntary dissolution claim was dismissed with prejudice. Code of Civil Procedure section 581, subdivision (c)[4] generally grants a plaintiff an unfettered right to dismiss a cause of action before commencement of trial. (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 786; *Panakosta, Partners, LP v. Hammer Lane Management, LLC*, *supra*, 199 Cal.App.4th at p. 632.) There is no issue in the case concerning a derivative shareholder claim. The language in section 2000, subdivision (a) is unambiguous. Upon dismissal of the dissolution cause of action, there is no dissolution to avoid and, thus, no right to buy out plaintiff's interests. (*Id.* at pp. 634-635; *Cubalevic v. Superior Court* (1966) 240 Cal.App.2d 557, 562 (*Cubalevic*).)

In *Panakosta*, *supra*, 199 Cal.App.4th at pages 618-635, limited partners in a partnership filed an action. The plaintiffs filed suit against other limited partners and sought judicial dissolution of the partnership as well as declaratory and injunctive relief. (*Id.* at p. 618.) While the suit was pending, one of the defendants filed a proceeding under a new case number. The new lawsuit sought: to buy out the plaintiffs' partnership interests; the appointment of appraisers; and a stay of the related dissolution proceeding. (*Id.* at p. 621.) The plaintiffs then dismissed with prejudice their claim for dissolution of the partnership. (*Ibid.*) The trial court denied the defendants' motion for appointment of

fixed on appeal. On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties."

[4] Code of Civil Procedure section 581, subdivision (c) provides, "A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

7

appraisers and stay of the related case. Among other things, the trial court ruled that the request for dissolution, which was the condition precedent for the buyout, had been dismissed. (*Ibid.*)

The Court of Appeal affirmed the trial court's rulings. At issue was the application of section 15908.02. Section 15908.02 is substantially the same as the section 2000. Section 15908.02, subdivision (b) provides, "In any suit for judicial dissolution, the other partners may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the proceeding (the 'moving parties') at their fair market value." The Court of Appeal held: "[T]he right of buyout under section 15908.02 is dependent upon a cause of action for judicial dissolution. A request for buyout under section 15908.02 does not constitute a cause of action independent from a judicial dissolution action. Instead, a buyout represents an alternative to winding up a business when 'it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement.' (§ 15908.02, subd. (a).) . . . [¶] . . . [¶] . . . Without a pending judicial dissolution action, the trial court was without jurisdiction to allow the buyout petition to proceed." (*Panakosta, supra*, 199 Cal.App.4th at pp. 634-635.)

In *Cubalevic, supra*, 240 Cal.App.2d at page 558, the plaintiff shareholder filed a lawsuit that included an involuntary dissolution cause of action against a corporate defendant. A shareholder defendant moved for a stay of the dissolution proceeding and an order appointing appraisers. (*Id.* at pp. 559-560.) But before the argument on the motion, the plaintiff dismissed with prejudice the involuntary dissolution cause of action. (*Id.* at p. 560.) The trial court: treated the buyout motion as a cross-complaint; granted the buyout motion; and appointed an appraiser to fix the value of the plaintiff's shares. (*Id.* at pp. 560-561.) The shareholder defendant filed a prohibition petition seeking to set aside the foregoing orders. (*Id.* at pp. 558-561.)

8

The Court of Appeal granted the defendant's prohibition petition. Construing former section 4658,[5] the Court of Appeal held: "There is no independent right on the part of one or more stockholders in a corporation to compel the sale to them of the shares of stock of another. There being no such independent right it must follow that there could be no cause of action stated to compel such a sale whether by way of a cross-complaint or counterclaim which would survive after dismissal of the action for involuntary dissolution of the corporation in which the remedy of purchase is given. It is apparent that the real parties in interest here could not bring or maintain a separate action against petitioner the purpose of which would be to compel him to sell his stock to them. Under these circumstances, the remedy provided the real parties in interest under the provisions of section 4658 and section 4659 of the Corporations Code is ancillary to and is dependent upon the existence of the action to compel the involuntary dissolution of the corporation, and upon the dismissal of such action there is nothing left against which the ancillary remedy may be asserted or upon which it may be applied. [¶] In the case at bench, the action for involuntary dissolution having been dismissed with prejudice prior to a decision confirming an award as provided in section 4659 of the Corporations Code, there was left no basis upon which the trial court could make its order, the purpose of which was to ascertain the fair cash value of petitioner's shares and to permit the real parties in interest to purchase them in order to avoid the involuntary dissolution of the corporation. The making of such an order constituted an act in excess of the jurisdiction

---

[5] Former section 4658 provided: "In any such suit the holders of 50 percent or more of the outstanding shares of the corporation may avoid the appointment of a receiver or the dissolution of the corporation by purchasing the shares of stock owned by the plaintiffs at their fair cash value. [¶] If the holders of 50 percent or more of the outstanding shares of the corporation (a) elect to purchase the shares owned by the plaintiffs, and (b) are unable to agree with the plaintiffs upon the fair cash value of such shares, and (c) give bond with sufficient security to protect the interests and rights of the plaintiffs and to assure to the plaintiffs the payment of the value of their shares, the court shall stay the proceeding and shall proceed to ascertain and fix the value of the shares owned by the plaintiffs." (Stats. 1947, ch. 1038, § 4658, p. 2389; see *Cubalevic*, *supra*, 240 Cal.App.2d at p. 559, fn. 1.)

of the respondent court." (*Cubalevic*, *supra*, 240 Cal.App.2d at p. 562.) We agree with the trial court that the analysis in *Panakosta* and *Cubalevic*, coupled with the express language of section 2000, subdivision (a), required the buyout motion be denied.

Defendants rely on *Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 530 (*Go*). The facts in *Go* are unrelated to the procedural scenario in our case. The following is the procedural scenario: "Go sued defendants on September 7, 2006, seeking the involuntary dissolution of [Pacific Health Services, Inc.] pursuant to section 1800, subdivisions (b)(3) and (b)(4). Go also sought damages based on claims of breach of fiduciary duty and fraud (1) as a shareholder's derivative action, and (2) as a direct action brought by a shareholder and director. (*Vilma Go v. Pacific Health Services, Inc., et al.,* Los Angeles Super. Court Case No. BC358117.) [¶] On December 7, 2006, defendants filed a cross-complaint for breach of contract, misappropriation of corporate opportunities, and breach of the duty of loyalty. [¶] On April 5, 2007, defendants filed a motion pursuant to section 2000 for an order to stay the dissolution proceedings. They requested that the court set a valuation date of August 14, 2006, and fix the value of Go's shares. [¶] . . . On May 11, 2007, the court issued an order staying the dissolution proceedings, and providing for the appointment of three appraisers. The parties were to each choose one appraiser, and the two appraisers would then choose the third appraiser. The court ordered the valuation date to be September 7, 2006—the date Go filed suit— and ordered the appraisal to be concluded by September 14, 2007." (*Go*, *supra*, 179 Cal.App.4th at pp. 527-528, fns. omitted.) After the appointment process was completed and the appraisals conducted, eventually, the trial court issued what the Court of Appeal characterized as an alternative decree. (*Id.* at p. 525.) The Court of Appeal described the alternative decree thusly, "On September 19, 2008, the [trial] court issued an order directing [defendants] to pay Go $155,484, within 45 days, and stating that 'if this payment is not made within such time the involuntary winding up and dissolution of defendant corporation shall proceed immediately.'" (*Id.* at p. 529.)

10

On appeal, the Court of Appeal characterized the issue as follows: "Defendants contend on appeal that the alternative decree the court issued on September 19, 2008, should be set aside 'because [defendants] have not yet had the opportunity to defend themselves against [Go's] claim for Involuntary Dissolution of [PHS],' and that 'Go has not proven that she is entitled to relief under that claim.' Defendants argue, as they did in the trial court, that 'once there has been a determination on the merits that [Go] is entitled to commence the dissolution of [PHS], the entry of a decree with the effect of the Alternative Decree would be appropriate. . . . However, now is not the time for such an order, as the interests of equity and the desire for a determination on the merits justify a delay in the imposition of that relief.' They request that we set aside the alternative decree and 'remand this matter with directions to the Trial Court to only enter such a decree after [Go] has prevailed on [her] claims for involuntary dissolution.'" (*Go, supra*, 179 Cal.App.4th at p. 529.)

*Go, supra*, does not support defendants' position. In *Go*, the plaintiff did not dismiss her dissolution cause of action. The entire appraisal issue was litigated, orders were issued and the trial court issued an alternatively phrased decree which dissolved the corporation if the plaintiff remained unpaid. There was no discussion concerning how a dismissal by the plaintiff of the dissolution claim would have affected the defendants' right to purchase her shares. Here, Drake's dismissal of his involuntary dissolution claim rendered inapplicable the section 2000 buyout procedure. (See *Panakosta, supra*, 199 Cal.App.4th at pp. 621, 634-635; *Cubalevic, supra*, 240 Cal.App.2d at pp. 558-563.)

One final note is in order concerning the dismissal of the involuntary dissolution cause of action. No party has asserted that Drake is pursuing a derivative claim against defendants. Dismissal of a derivative claim requires court approval. (*Whitten v. Dabney* (1915) 171 Cal. 621, 630-632; see *Westwood Temple v. Emanuel Center* (1950) 98 Cal.App.2d 755, 762.) No party has asserted that court approval was necessary in this case for Drake to dismiss his involuntary dissolution cause of action. Any contention in that regard has been forfeited. (*Tiernan v. Trustees of Cal. State University & Colleges*

11

(1982) 33 Cal.3d 211, 216, fn. 4; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70, disapproved on another point in *Bailey v. Los Angeles* (1956) 46 Cal.2d 132, 139.)

## B. Defendants Have No Right to Compel a Buyout of Plaintiff's Interest in the Limited Liability Companies

Defendants contend they are entitled to buy out Drake's interests in the *limited liability companies* even though he dismissed his involuntary dissolution cause of action. Defendants rely on section 17707.03, subdivision (c)(6) which, in the context of limited liability companies, states, "A dismissal of any suit for judicial dissolution by a manager, member, or members shall not affect the other members' rights to avoid dissolution pursuant to this section." Section 17707.03, subdivision (c)(6) was enacted in 2012. (Stats. 2012, ch. 419, § 20.) Defendants argue that Section 17707.03, subdivision (c)(6) cannot be applied to this case because it was not operative when the conduct which allegedly permits dissolution occurred.

Before analyzing the parties' retroactivity contentions, it is appropriate to review the events leading up to the adoption of section 17707.03, subdivision (c)(6). Enacted in 1994, the Beverly-Killea Limited Liability Company Act was largely codified in former section 17000 et seq. (Stats. 1994, ch. 1200, §§ 1-100, pp. 7274-7413; see *CB Richard Ellis, Inc. v. Terra Nostra Consultants* (2014) 230 Cal.App.4th 405, 411, fn. 4.) Former section 17000 et seq. comprehensively governed the affairs of limited liability companies. (*Nicholas Laboratories, LLC v. Chen* (2011) 199 Cal.App.4th 1240, 1252; see *People v. Pacific Landmark* (2005) 129 Cal.App.4th 1203, 1211-1212; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 323 (2011-2012 Reg. Sess.)[6] as amended Jan. 4, 2012, p. 2.) Former section 17000 et seq. was codified in title 2.5 of the Corporations Code. The Beverly-Killea Limited Liability Company Act was replaced in 2012 by the California

---

[6] Future references to Senate Bill No. 323 are to the bill enacted in the 2011-2012 Regular Session.

Revised Uniform Limited Liability Company Act. (Stats. 2012, ch. 323, §§ 1-32; Legis. Counsel's Dig., Sen. Bill No. 323; see *CB Richard Ellis, Inc. v. Terra Nostra Consultants*, *supra*, 230 Cal.App.4th at p. 411, fn. 4.) The California Revised Uniform Limited Liability Company Act enacted new Corporations Code title 2.6 which consists of section 17701.01 et seq. New title 2.6, the California Revised Uniform Limited Liability Company Act, replaced former title 2.5 of the Corporations Code.

We turn now to section 17707.03. Section 17707.03, subdivision (a) allows for the dissolution of a limited liability company under specified circumstances.[7] Those

---

[7] Section 17707.03 provides in its entirety: "(a) Pursuant to an action filed by any manager or by any member or members of a limited liability company, a court of competent jurisdiction may decree the dissolution of a limited liability company whenever any of the events specified in subdivision (b) occurs. [¶] (b)(1) It is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. [¶] (2) Dissolution is reasonably necessary for the protection of the rights or interests of the complaining members. [¶] (3) The business of the limited liability company has been abandoned. [¶] (4) The management of the limited liability company is deadlocked or subject to internal dissention. [¶] (5) Those in control of the limited liability company have been guilty of, or have knowingly countenanced persistent and pervasive fraud, mismanagement, or abuse of authority. [¶] (c)(1) In any suit for judicial dissolution, the other members may avoid the dissolution of the limited liability company by purchasing for cash the membership interests owned by the members so initiating the proceeding, the 'moving parties,' at their fair market value. In fixing the value, the amount of any damages resulting if the initiation of the dissolution is a breach by any moving party or parties of an agreement with the purchasing party or parties, including, without limitation, the operating agreement, may be deducted from the amount payable to the moving party or parties; provided, that no member who sues for dissolution on the grounds set forth in paragraph (3), (4), or (5) of subdivision (a) shall be liable for damages for breach of contract in bringing that action. [¶] (2) If the purchasing parties elect to purchase the membership interests owned by the moving parties, are unable to agree with the moving parties upon the fair market value of the membership interests, and give bond with sufficient security to pay the estimated reasonable expenses, including attorney's fees, of the moving parties if the expenses are recoverable under paragraph (3), the court, upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the membership interests owned by the moving parties. [¶] (3) The court shall appoint three disinterested

13

circumstances are specified in section 17707.03, subdivision (b). Section 17707.03, subdivisions (c)(1) through (5) describes how the buyout procedure is conducted. As noted, section 17707.03, subdivision (c)(6) permits the corporate buyout remedy to proceed even when a plaintiff seeking dissolution of a limited liability company dismisses his or her cause of action. There is no similar buyout provision in the General Corporation Law codified in section 1 et seq. (Forming and Operating California Limited Liability Companies (Cont.Ed.Bar 3d ed. 2014), § 16.21 (Forming and Operating).) Also, no such comparable terms are present in the Uniform Limited Partnership Act of 2008 which is codified at section 15900 et seq. (Forming and Operating, *op. cit*, § 16.21.) The upshot of section 17707.03, subdivision (c)(6) is as follows in the context of limited liability companies: "[O]nce the buyout procedure is commenced, the moving party cannot, by dismissing the judicial dissolution action, prevent the buyout procedure

---

appraisers to appraise the fair market value of the membership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited liability company, unless payment is made for the membership interests within the time specified by the decree. If the purchasing parties do not make payment for the membership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorney's fees, of the moving parties. Any member aggrieved by the action of the court may appeal therefrom. [¶] (4) If the purchasing parties desire to prevent the winding up and dissolution of the limited liability company, they shall pay to the moving parties the value of their membership interests ascertained and decreed within the time specified pursuant to this section, or, in the case of an appeal, as fixed on appeal. On receiving that payment or the tender of payment, the moving parties shall transfer their membership interests to the purchasing parties. [¶] (5) For the purposes of this section, the valuation date shall be the date upon which the action for judicial dissolution was commenced. However, the court may, upon the hearing of a motion by any party, and for good cause shown, designate some other date as the valuation date. [¶] (6) A dismissal of any suit for judicial dissolution by a manager, member, or members shall not affect the other members' rights to avoid dissolution pursuant to this section."

14

from going forward. The purchasing party has the right to pursue the buyout procedure by compelling a sale (if the valuation is favorable) or walking away (if it is not)." (Forming and Operating, *op. cit.*, § 16.21.)

Defendants argue that section 17707.03, subdivision (c)(6) applies to this action which was commenced by the filing of Drake's complaint on September 25, 2013. Drake argues though that the unique retroactivity and operative date provisions applicable to limited liability companies prevents section 17707.03, subdivision (c)(6) from applying here. Drake has the better argument.

Defendants first rely on California Constitution, article IV, section 8, subdivision (c)(1) which states, "Except as provided in paragraphs (2) and (3) of this subdivision, a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute next following a 90-day period from the date of enactment of the statute. . . ." (Gov. Code, § 9600, subd. (a) [codifying Cal. Const., art. IV, § 8, subd. (c)(1)].) Defendants argue that section 17707.03, subdivision (c)(6) was therefore effective on January 1, 2013. Then, defendants cite to the savings clause for the California Revised Uniform Limited Liability Company Act which states, "This title does not affect an action commenced, proceeding brought, or right accrued or accruing before this title takes effect." (§ 17713.03.) Section 17707.03 is part of title 2.6 of the Corporations Code and the California Revised Uniform Limited Liability Company Act. (§ 17701.01.) Thus, defendants argue the Legislature intended the buyout provisions for limited liability companies in section 17707.03, subdivision (c)(6) to apply to our action which was filed after January 1, 2013. Further, defendants' motion to stay the dissolution and appoint appraisers was filed on January 28, 2014. Also, Drake's dismissal request was filed on February 10, 2014. Since these events occurred after the effective date of the California Revised Uniform Limited Liability Company Act, defendants contend section 17707.03, subdivision (c)(6) applies here. By contrast, Drake relies upon both sections 17713.03, which we have discussed, and 17713.13 which states, "This title shall become operative on January 1, 2014."

15

In our view, the statutory language concerning when the California Revised Uniform Limited Liability Company Act in general and section 17707.03, subdivision (c)(6) in particular is ambiguous. A sound argument can be made, as defendants do, that the limited liability company legislation applies to an action commenced prior to January 1, 2014. Likewise, the operative date language in section 17713.13 supports Drake's thoughtful contention that section 17707.03, subdivision (c)(6) cannot apply in our case. As we previously explained, when statutory language is ambiguous, it may be appropriate to resort to legislative history documents to determine what the Legislature intended. Our Supreme Court has held: "If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. (*Olson v. Automobile Club of Southern California*[ (2008)] 42 Cal.4th [1142,] 1147.) 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*[ (1987)] 43 Cal.3d [1379,] 1387.)" (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 111.) We allowed the parties to address the desirability of judicially noticing the documents referenced in the remainder of this opinion. (Evid. Code, §§ 455, subd. (a), 459, subd. (c); see *People v. Preslie* (1977) 70 Cal.App.3d 486, 493.) We cite them because they are relevant to discerning the Legislature's intentions. (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1050; *People v. Soto* (2011) 51 Cal.4th 229, 240-241.)

In order to determine the Legislature's intent, we turn to documents largely prepared in 2012 including those contained in legislative files. To begin with, legislators were repeatedly advised that adoption of the California Revised Uniform Limited Liability Company Act would repeal the Beverly-Killea Limited Liability Company Act. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 323 as amended Jan. 4, 2012, pp. 1- 2, 19-20; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 323 as amended Jan. 13, 2012, p. 1; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 323 as amended Jan. 13, 2012, p. 1; Assem. Republican Caucus, analysis on Sen. Bill No. 323

16

as amended Jan. 13, 2012, p. 1; Assem. Com. on Appropriations, Rep. on Sen. Bill No. 323 as amended Aug. 6, 2012, pp. 1-2; Dept. of Finance Analysis of Sen. Bill No. 323 as amended Aug. 14, 2012, p. 1; Sen. 3d reading analysis of Sen. Bill No. 323 as amended Aug. 14, 2012, p. 1-2; Sen. Republican Policy Office, Rep. on Sen. Bill No. 323 as amended Aug. 14, 2012 p. 1; Assem. Republican Caucus, analysis on Sen. Bill No. 323 as amended Aug. 14, 2012, p. 1; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 323 as amended Aug. 23, 2012, pp. 2, 4; Sen. Republican Policy Office, Rep. on Sen. Bill No. 323 as amended Aug. 23, 2012, p. 1; Assem. Republican Bill Analysis on Sen. Bill No. 323 as amended Aug. 23, 2012, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 323 as amended Aug. 29, 2012, pp. 3-5; Sen. Republican Policy Office, Rep. on Sen. Bill No. 323 as amended Aug. 29, 2012, p. 1; Assem. Republican Bill Analysis on Sen. Bill No. 323 as amended Aug. 29, 2012, p. 1.) And Senator Juan Vargas, the author of Senate Bill No. 323, advised the Assembly Committee on Judiciary his legislation would repeal the Beverly-Killea Limited Liability Company Act. (Assem. Com. on Judiciary, Mandatory Information Worksheet concerning Sen. Bill No. 323, p. 1.)

Further, the Legislature was aware that Sen. Bill No. 323 would create separate *effective* and *operative* dates for the California Revised Uniform Limited Liability Company Act. As originally proposed, there were two separate effective and operative dates. The initial Senate Judiciary committee report prepared for the January 10, 2012 hearing states: "Typically, when large sections of the Corporations Code [are] repealed and a new act is enacted, the Legislature provides at least 2 years from the date of enactment of the bill for the repeal of the old laws to allow forms to be updated and provide sufficient notice to the public of the changes in the statutes. (See e.g., AB 339 (Harman, [c]h. 495, Stats. 2006).) . . . Accordingly, if this bill moves forward, the inoperation and repeal dates of Beverly Killea should be modified, along with the operation date of this bill, and the author has agreed to take these amendments in committee." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 323 as amended Jan. 4, 2012

17

(2011-2012 Reg. Sess.) p. 16.) This analysis is consistent with section 1004 of the Revised Uniform Limited Liability Company Act which serves as the basis of section 17701.01 et seq. Section 1004 of the Revised Uniform Limited Liability Company Act recommends there be a date between when a new limited liability company statute is enacted and it becomes operative. (Revised Uniform Limited Liability Company Act (2006) § 1004, Legislative Note.)

Also, committee and caucus reports state the Beverly-Killea Limited Liability Company Act was to be repealed effective January 1, 2014. (Sen. Com. on Judiciary, *op. cit.*, pp. 19-208; Sen. 3d reading analysis of Sen. Bill No. 323 as amended Aug. 14, 2012, p. 1; Assem. Republican Caucus, analysis on Sen. Bill No. 323 as amended Aug. 14, 2012, p. 1; Assem. Republican Caucus, analysis on Sen. Bill No. 323 as amended Aug. 23, 2012, p. 1; Sen. 3d reading analysis of Sen. Bill No. 323 as amended Aug. 23, 2012, p. 1; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 323 as amended Aug. 23, 2012, p. 2; Sen. Rules Com., Off. Of Sen. Floor Analysis, Unfinished Business Analysis of Sen. Bill No. 323 as amended Aug. 29, 2012 (2011-2012 Reg. Sess.).) Additionally, the Legislative Counsel's Digest for Senate Bill No. 323 states that the Beverly-Killea Limited Liability Company Act is repealed as of January 1, 2014. Further, former section 17657, subdivision (b) was adopted as section 19 of Senate Bill No. 323. Former section 17657, subdivision (b), which was part of title 2.5 of the Corporations Code, stated, "This title shall remain in effect only until January 1, 2014, and as of that date is repealed. . . ." As noted, the Beverly-Killea Limited Liability Company Act enacted title 2.5 of the Corporations Code.

From the foregoing, we deduce the following. The Legislature intended that the Beverly-Killea Limited Liability Company Act remain in effect until January 1, 2014. The Beverly-Killea Limited Liability Company Act was repealed effective January 1, 2014. The Beverly-Killea Limited Liability Company Act has no provisions similar to section 17707.03, subdivision (c)(6) which permits a buyout to occur if an involuntary dissolution claim is dismissed. The Legislature did not intend that both the Beverly-

18

Killea Limited Liability Company and California Revised Uniform Limited Liability Company Acts be operative at the exact same time. And, the Legislature intended there be separate dates upon which the California Revised Uniform Limited Liability Company Act was enacted and when it actually went into effect. Further, on occasion, the Legislature has enacted statutes which have different effective and operative dates. In *People v. Alford* (2007) 42 Cal.4th 749, 753, footnote 2, our Supreme Court explained: "'"The effective date [of a statute] is . . . the date upon which the statute came into being as an existing law." [Citation.] "[T]he operative date is the date upon which the directives of the statute may be actually implemented." [Citation.] Although the effective and operative dates of a statute are often the same, the Legislature may "postpone the operation of certain statutes until a later time." [Citation.]' (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223.)"

We now return to the language in section 17713.03 which states, "This title does not affect an action commenced, proceeding brought, or right accrued or accruing before this title takes effect." The plain language of section 17713.03 provides that title 2.6, which includes section 17707.03, subdivision (c)(6), may not affect a lawsuit under four circumstances: where a lawsuit is filed before January 1, 2014; where a proceeding is brought before that date; where a right accrues prior to that date; *or* a right is accruing before January 1, 2014. As is clear, section 17713.03 is written in the disjunctive, which in its ordinary sense functions to mark an alternative meaning as "'either this or that'" in statutes. (*Houge v. Ford* (1955) 44 Cal.2d 706, 712; accord *Barker Bros., Inc. v. Los Angeles* (1938) 10 Cal. 2d 603, 606.) The dispute at issue involves words "takes effect" in section 17713.03. Defendants contend it is the effective date of the statute. (Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a).) Drake argues it is the date the statute became operative. (§ 17713.13.) The Beverly-Killea Limited Liability Company Act, which was found in former title 2.5 of the Corporations Code, remained in effect until January 1, 2014. (See 9 Witkin, Summary of Cal. Law (2014 Supp.) Partnership, § 192, p. 168.) Thus, title 2.6 of the Corporations Code, which includes

19

section 17707.03, subdivision (c)(6), was not in effect, i.e. operative, until January 1, 2014. (See 5 Ballantine & Sterling, California Corporation Laws (4th ed. 2014) Legislative Alert to Chapter 27, p. SA-27-1 (Rel. 119-6/2013).) As noted, the present action was commenced before January 1, 2014. Because Drake's complaint was filed prior to January 1, 2014, title 2.6 of the Corporations Code, which includes section 17707.03, subdivision (c)(6) does not apply to the present action. (§ 17713.03; see *CB Richard Ellis, Inc. v. Terra Nostra Consultants*, *supra*, 230 Cal.App.4th at p. 411, fn. 4.) Thus, we agree with the trial court that the dismissal of the involuntary dissolution cause of action prevented defendants from invoking their buyout rights in the limited liability companies.

[Part III (C) is deleted from publication. See *post* at p. 22 where publication is to resume.]

## C. Unpublished Discussion

First, defendants contend that section 17707.03, subdivision (c)(6) applies to all other claims, not merely those involving the limited liability companies. This contention has no merit. Section 17707.03, subdivision (c)(6) only applies to limited liability companies. (Legis. Counsel's Dig. Sen. Bill No. 323, para. 1 ["This bill would repeal [the Beverly-Killea Limited Liability Company Act] as of January 1, 2014, and enact the California Revised Uniform Limited Liability Company Act, as of that date which would recast provisions governing the formation and *operation of limited liability companies*."]; § 17707.03, subdivision (c)(1) [" In any suit for judicial dissolution, the other members may avoid the dissolution *of the limited liability company* by purchasing for cash . . ."], italics added; 9 Witkin, *op. cit.*, § 192, p. 168.)

Second, defendants contend that other provisions of the Corporations Code reflect a legislative intent to allow a buyout to occur outside the context of limited liability

20

companies. No such legislative intent is present. Moreover, the Legislature has never evinced an intent to modify the power of a plaintiff to unilaterally dismiss a cause of action. In the published portion of this opinion, we have previously discussed the effect of a dismissal of an involuntary dissolution claim. (See pp. 5-12, *supra*.) Apart from section 17707.03, subdivision (c)(6), which applies to limited liability companies only, a dismissal of a corporate dissolution claim eliminates the need for a buyout. Only in the context of section 17707.03, subdivision (c)(6) has a Legislature expressed any interest in modifying the effect of a dismissal request by a plaintiff.

Third, defendants rely on a statute of limitations case, *County of Sacramento v. Llanes* (2008) 168 Cal.App.4th 1165, 1174. Defendants argue that *Llanes* stands for the proposition that the terms "enactment" and "effective date" have distinct meanings when applied to statutes. *Llanes* is a case involving a paternity judgment. It has nothing to do with the specific issues raised by sections 17707.03, subdivision (c)(6) and 17713.03 in the context of the California Revised Uniform Limited Liability Company Act.

Fourth, in their post-argument letter brief, defendants argue the Legislature intended that the California Revised Uniform Limited Liability Company Act go into effect as soon as possible. This intention resulted from the alleged legislative view that the primary problem with the Beverly-Killea Limited Liability Company Act was that it was not uniform with other states' statutory provisions. The flaw with defendants' argument is that the Beverly-Killea Limited Liability Company Act remained in full force and effect until January 1, 2014. Here there are two comprehensive statutory regimes— the California Revised Uniform Limited Liability Company and Beverly-Killea Limited Liability Company Acts. There are no committee reports which support the conclusion the Legislature intended that both comprehensive limited liability company statutes be simultaneously in effect. No doubt, the Legislature intended that the California Revised Uniform Limited Liability Company Act go into effect as soon as practical, as defendants reason. But the simple truth is the Legislature fixed that date at January 1, 2014, not earlier.

21

[The balance of the opinion is to be published.]


IV.  DISPOSITION


The May 13, 2014 order denying the motion to stay dissolution and appoint appraisers is affirmed.  Plaintiff, Drake Kennedy, shall recover his costs incurred on appeal from defendants, Brian Kennedy, David Seyde and Skyline Outdoor Media LLC.

CERTIFIED FOR PARTIAL PUBLICATON


TURNER, P. J.


We concur:


KRIEGLER, J.


GOODMAN, J.[*]


---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.