Filed 2/2/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WESTERN SURETY COMPANY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LA CUMBRE OFFICE<br>PARTNERS, LLC,<br><br>    Defendant and Appellant. | 2d Civil No. B269276<br>(Super. Ct. No. 1414261)<br>(Santa Barbara County) |

A natural person is the managing member of a limited liability company (LLC 1) that is the sole manager of another limited liability company (LLC 2). The person signs an agreement on behalf of LLC 2, but misstates his position as the managing member of LLC 2 instead of the managing member of LLC 1, LLC 2's manager. LLC 1 does not have actual authority to execute the agreement on behalf of LLC 2. In these circumstances, does the person's signature bind LLC 2? We conclude that it does pursuant to former Corporations Code section 17157, subdivision (d) (now section 17703.01, subdivision (d)), provided that the other party to the agreement does not have

actual knowledge of the person's lack of authority to execute the agreement on behalf of LLC 2.

Western Surety Company (respondent) filed an action against La Cumbre Office Partners, LLC, (appellant) for breach of an indemnity agreement. Mark J. Melchiori (Melchiori) signed the agreement on appellant's behalf as its managing member. But he was actually the managing member of appellant's manager, Melchiori Investment Companies, LLC (MIC). MIC did not have actual authority to execute the indemnity agreement on appellant's behalf.

Appellant contends that the trial court erroneously granted respondent's motion for summary judgment requiring it to pay respondent approximately $6.07 million pursuant to the indemnity agreement. Appellant contends, as a matter of law, that it is not bound by the agreement because its actual manager, MIC, did not sign the agreement on its behalf. We affirm.

*Factual and Procedural Background*

Appellant was a limited liability company with nine members. The members' capital contributions totaled $3.65 million. Appellant's articles of organization were filed in 2006. They provide that the company will be managed by "one manager." MIC, the sole manager, was a member of appellant with an ownership interest of 9.5891 percent. Melchiori was the managing member of MIC and owned half of that company. Melchiori was also part owner of Crespano del Grappa, LLC, a member of appellant with an ownership interest of 17.8082 percent. Melchiori personally was not a member of appellant.

Appellant's articles of organization provide that "the purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be

2

organized under the Beverly-Killea Limited Liability Act." But appellant's operating agreement provides that "the initial purpose of the Company shall be to acquire, hold, operate and, perhaps, redevelop" the real property at 200 N. La Cumbre Road in the City of Santa Barbara (the property). The property consists of a medical office building with surface parking. The operating agreement states that appellant's manager, MIC, "shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs." But without the "vote or written consent of a Majority Interest of the Members," the manager shall not engage in "[a]ny act which would make it impossible to carry on the ordinary business of the Company."

Melchiori was the president of Melchiori Construction Company, Inc. (MCC). In 2008 he had been in the construction business for 22 years. In February 2008 Melchiori signed a "General Agreement of Indemnity" (Indemnity Agreement) on his own behalf and on behalf of appellant, MCC, and MIC. Seven other individuals or entities also signed. The Indemnity Agreement required the signers, referred to as "indemnitors," to indemnify respondent against liability incurred as a result of surety bonds to be issued by respondent on behalf of any of the indemnitors. The agreement stated that the indemnitors "do hereby affirm to have a substantial material or beneficial interest" in the bonds.

On behalf of indemnitor MIC, Melchiori correctly signed the Indemnity Agreement as MIC's "Managing Member."

3

On behalf of appellant, Melchiori wrongly signed, "La Cumbre Office Partners, LLC [by] Mark J. Melchiori, Managing Member." MIC, not Melchiori, was appellant's manager. Melchiori was not a member of appellant, although MIC was a member.[1]

Daniel Z. Majam, Jr., was an underwriter manager for respondent's parent company, CNA Insurance. He prepared the Indemnity Agreement. On the signature pages, he directed his assistant to type, "La Cumbre Office Partners, LLC [by] Mark J. Melchiori, Managing Member." Majam testified that Melchiori had said he was the managing member of appellant and could "bind the company." He "indicated he had controlling interests" in appellant. Majam did not verify Melchiori's representations with the California Secretary of State because he "believe[d] Mark Melchiori." Respondent did not "do any due diligence to determine whether or not Mr. Melchiori was authorized by [appellant] to sign the indemnity agreement."

Melchiori, on the other hand, testified that he had never told anyone that he was appellant's managing member. No one connected to respondent had inquired about the identity of appellant's manager. When Melchiori signed the agreement, he did not notice that he was signing on behalf of appellant as its

---

[1] Melchiori should have signed as follows:
        La Cumbre Office Partners, LLC
        by Melchiori Investment Companies, LLC, Manager
        by Mark J. Melchiori, Managing Member of Melchiori
        Investment Companies, LLC
During appellate oral argument, appellant's counsel conceded that his client would have been "on the hook" if Melchiori had signed the Indemnity Agreement in this manner.

managing member. He did not even "notice that [appellant] was listed as an indemnitor."

Melchiori further testified that he had no idea why appellant was named as an indemnitor or who had put its name on the Indemnity Agreement. He did not know how respondent had learned that appellant "even existed." But pursuant to appellant's statement of additional material facts and respondent's responses thereto, it is undisputed that Majam "first learned of [appellant's] existence in or around April 2007 when he reviewed an April 2007 personal financial statement of Mark Melchiori that identified [appellant] as an asset valued at $5.6 million."

C. Norman Borgatello was a member of appellant with a 52.0548 percent ownership interest. He declared: "The only business [appellant] has ever engaged in has been the ownership of an office building located at 200 N. La Cumbre Road, Santa Barbara." Six of appellant's nine members "had no ownership, economic, beneficial or other interest in [MCC]." Appellant "has no business, economic or other connection to [MCC]."[2] "No affirmative vote or written consent of a majority interest of [appellant's] members was obtained before the Indemnity Agreement . . . was signed. In fact the issue was never raised." "[N]o manager of [appellant] was ever authorized to sign the Indemnity Agreement." Borgatello did not know that respondent "was claiming [appellant] signed the Indemnity Agreement until [appellant] was served the complaint in this matter."

_____

[2] However, Melchiori testified that appellant had hired MCC to make "fixes and improvements that needed to be made post purchase" of the property.

5

In 2009 and 2010, respondent issued bonds to guarantee the performance of MCC's contractual obligations in several construction projects. MCC defaulted on the contracts, and respondent paid claims guaranteed under the bonds. Respondent alleged that "the net amount of [its] losses and expenses" was $6,069,998.50. Appellant refused to reimburse respondent for any of its losses or expenses.

In November 2012 respondent filed a complaint against appellant for breach of the Indemnity Agreement. It is undisputed that "[n]ot one of the bonds [respondent] lists in its complaint had any relation to [appellant's] business of operating the [p]roperty." It is also undisputed that appellant "did not engage in any business requiring bonds."

The trial court issued a five-page ruling granting respondent's motion for summary judgment. Based on two appellate opinions, it concluded that appellant was bound by Melchiori's signature on the Indemnity Agreement. The opinions are *Greve v. Taft Realty Co.* (1929) 101 Cal.App. 343 (*Greve*), and *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754 (*Snukal*). [3]

*Controlling Legislative Act*

Both parties agree that the instant case is governed by the Beverly-Killea Limited Liability Company Act (Beverly-Killea Act), former Corporations Code section 17000 et seq. Effective January 1, 2014, the Beverly-Killea Act was repealed and replaced by the California Revised Uniform Limited Liability

---

[3] The standard of review on appeal from the granting of summary judgment is well known and need not be repeated. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Martinez v. Combs* (2010) 49 Cal.4th 35, 68.)

Company Act (Revised Act), Corporations Code section 17701.01 et seq. (Stats. 2012, ch. 419, §§ 19-20; see *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1490-1491.)

Section 17713.03 of the Revised Act provides, "This title does not affect an action commenced, proceeding brought, or right accrued or accruing before this title takes effect." The complaint in the instant case was filed in November 2012, more than one year before the Revised Act became effective. Thus, the Beverly-Killea Act applies here. (*Kennedy v. Kennedy*, *supra*, 235 Cal.App.4th at p. 1491 [Revised Act does not apply to complaint filed prior to January 1, 2014].)

Unless otherwise stated, all further statutory references concerning limited liability companies are to former Corporations Code sections of the Beverly-Killea Act.

*Management of Limited Liability Companies*

"'A limited liability company is a hybrid business entity formed under the Corporations Code and consisting of at least two "members" [citation] who own membership interests [citation]. The company has a legal existence separate from its members. Its form provides members with limited liability to the same extent enjoyed by corporate shareholders [citation] . . . .' [Citation.]" (*PacLink Communications International, Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963.)

The management of a limited liability company may be vested in the company's members. (§ 17150.) Where such vesting occurs, "every member is an agent of the limited liability company for the purpose of its business or affairs, and the act of any member . . . binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter, and the person with

7

whom the member is dealing has actual knowledge of the fact that the member has no such authority." (§ 17157, subd. (a).)

On the other hand, "[t]he articles of organization may provide [and do provide in appellant's situation] that the business and affairs of the limited liability company shall be managed by or under the authority of one or more managers who may, but need not, be members." (§ 17151, subd. (a).) Where, as here, the articles of organization so provide, "[n]o member, acting solely in the capacity of a member, is an agent of the limited liability company nor can any member bind, nor execute any instrument on behalf of, the limited liability company." (§ 17157, subd. (b)(1).)

The key statute here is section 17157, subdivision (d) (section 17157(d)). It provides: "[A]ny . . . contract . . . or other instrument in writing . . . executed or entered into between any limited liability company and any other person, when signed by at least two managers (or [as here] by one manager in the case of a limited liability company whose articles of organization state that it is managed by only one manager), is not invalidated as to the limited liability company by any lack of authority of the signing managers or manager in the absence of actual knowledge on the part of the other person that the signing managers or manager had no authority to execute the same." Current Corporations Code section 17703.01, subdivision (d) of the Revised Act contains the identical language.

*Discussion*

In its opening brief, appellant correctly states the rule of section 17157(d): "Third parties who enter into a written agreement signed by the manager of an LLC [limited liability company] enjoy a statutory 'safe harbor': the agreement is

8

binding on the LLC even if the manager had no authority to sign, as long as the third party was without actual knowledge of the manager's lack of authority." "The words of former *§ 17157(d)* are plain and clear: a written contract signed by an LLC's manager is valid even if the manager - without the knowledge of the third party - was without authority."

A similar rule applies to corporations. Corporations Code section 313 (section 313) provides "that an instrument entered into by a corporation is not invalidated by any lack of authority on the part of the officers executing the instrument if (1) it has been executed by the [statutorily] designated officers, and (2) the other party does not have actual knowledge that the signing officers lacked authority to execute the instrument." (*Snukal*, *supra*, 23 Cal.4th at p. 782.)[4] In *Snukal* our Supreme Court concluded that, if the statutory criteria are met, "section 313 precludes the invalidation of an instrument entered into by a corporation, *despite* the presentation of evidence demonstrating that the signing officers lacked authority to execute the instrument on its behalf. Thus, the statute provides a conclusive,

---

[4] When *Snukal* was decided, the text of section 313 was as follows: "[A]ny . . . contract . . . or other instrument in writing . . . executed or entered into between any corporation and any other person, when signed by the chairman of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation, is not invalidated as to the corporation by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person that the signing officers had no authority to execute the same." Effective January 1, 2016, section 313 was amended to substitute "chairperson" for "chairman." (Stats. 2015, ch. 98, § 6.)

rather than a merely rebuttable, evidentiary presumption of authority to enter into the agreement on the part of the specified . . . officers." (*Ibid*.)  The court continued, "Because the statute applies even when the other party should have, but does not have, actual knowledge of the officers' lack of authority, that party is relieved of the burden of establishing *justifiable* reliance upon the authority of the executing officers." (*Id.*, at p. 783.)

Appellant does not claim that respondent had actual knowledge that Melchiori lacked authority to sign the Indemnity Agreement on appellant's behalf.[5]  Thus, pursuant to section 17157(d), appellant is bound by the agreement if it is deemed to have been signed by appellant's manager, MIC.  Appellant argues that, as a result of the mistaken designation of Melchiori's position as appellant's managing member, MIC did not sign the agreement on appellant's behalf.[6]  We are guided by the two cases relied upon by the trial court:  *Greve* and *Snukal*.

In *Greve* the defendant was a corporation that had entered into a commission agreement.  Various officers of the corporation signed the agreement "without any designation as to their official characters [i.e., positions]." (*Greve, supra*, 101 Cal.App. at p. 349.)  The corporation contended "that the affixing of [its] name . . . to the commission agreement by the officers without setting forth their official designation is insufficient to

---

[5] During appellate oral argument, appellant's counsel stated that "actual knowledge of the lack of authority [is] a defense that is not really at issue here."

[6] MIC signed the Indemnity Agreement on its own behalf. The signature page lists MIC as a separate indemnitor.  Under MIC's name, Melchiori correctly signed as its "Managing Member."

10

constitute the agreement an obligation of the corporation." (*Ibid.*) The appellate court held to the contrary: "[W]hen the name of a corporation is attached to an agreement by its proper officers, it is unnecessary to attach to the names of the persons executing the agreement for the corporation the official designation of the one who signs his name, but . . . such official designation may be otherwise established." (*Id.*, at p. 350; see also *Snukal*, *supra*, 23 Cal.4th at p. 780, fn. 8 [citing *Greve* as supporting authority, Supreme Court noted, "At common law, when the corporate officer's actual authority to execute the agreement has been established or is not in doubt, the circumstance that he or she does not specify the office held does not invalidate the agreement as to the corporation"].)

Pursuant to the reasoning of *Greve*, appellant would have been bound by the Indemnity Agreement if Melchiori had signed his name without indicating his official position - managing member of appellant's manager, MIC.  It follows that appellant is bound even though the agreement's signature page mistakenly showed that Melchiori was appellant's managing member.  Appellant's signature bound MIC and, therefore, also bound appellant.

In *Snukal* a corporate official, Lyle, executed a lease on behalf of the corporation, Flightways.  Lyle was president, chief financial officer, and secretary of Flightways.  He signed the lease only as president.  To fall within the safe harbor of section 313, the statute required that the lease be signed by a person holding at least one corporate office in each of two separate categories of offices.  (See fn. 4, *ante*.)  The office of president is in one category, while the offices of chief financial officer and secretary are in another category.  Thus, for Flightways to be

bound under section 313, both the president *and* chief financial officer or secretary, were required to sign the lease.

Our Supreme Court rejected Flightways's claim that section 313 "applies only when two officers holding the offices specified in the statute execute an instrument and *name the corporate offices held* - whether the requisite offices are held by the same person or by two persons." (*Snukal, supra*, 23 Cal.4th at p. 777.) The court held: "Corporations Code section 313 does not contain any language directing that the signing officers be separate individuals, *or that the signing officers specify the office or offices they hold*. Accordingly, although Corporations Code section 313 applies only where corporate officers in each of the two designated series or categories execute the instrument, that statute . . . is satisfied when one individual who in fact holds two of the specified corporate offices executes the instrument. [Citation.]" (*Id.*, at p. 786, fn. omitted, italics added.) "In the present case, therefore, because Lyle served both as Flightways's president and as its chief financial officer (and secretary), and because plaintiff did not have actual knowledge of any lack of authority on Lyle's part, the lease agreement was not invalidated by Lyle's lack of authority to enter into such an agreement on behalf of Flightways." (*Id.*, at p. 787, fn. omitted.)

In *Snukal* the lease correctly designated Lyle as the corporation's president. Here, on the other hand, the Indemnity Agreement mistakenly designated Melchiori as appellant's managing member. But this is a distinction without a difference. *Snukal* makes clear that, to bind the corporation under section 313, the signer's offices need not be set forth in the instrument signed. What matters is whether the signer is the person he is statutorily required to be: in *Snukal* the president and chief

12

financial officer or secretary of the corporation; in the instant case the managing member of appellant's manager, MIC. Like section 313, section 17157(d) "does not contain any language directing that the signing [manager] . . . specify the [position he] hold[s]." (*Snukal*, *supra*, 23 Cal.4th at p. 786.) Thus, pursuant to the reasoning of *Snukal*, Melchiori's signature bound appellant under section 17157(d).

Appellant argues that *Snukal* "requires that [respondent] prove liability based on common law theories instead of a statutory safe harbor" pursuant to section 17157(d). *Snukal* concluded, "If . . . an agreement is not entered into on behalf of the corporation by the [statutorily] specified officers, the third party still may seek its validation by invoking traditional common law theories, thereby incurring an increased burden of proof." (*Snukal*, *supra*, 23 Cal.4th at p. 784.) Because the Indemnity Agreement was entered into on behalf of appellant by the statutorily specified person - the managing member of appellant's manager, MIC - respondent need not invoke traditional common law theories. Like section 313, section 17157(d) "absolves [respondent] of having to prove, as [it] would be required to at common law, that [Melchiori] had actual or ostensible authority to bind [appellant] to the instrument at issue . . . ." (*Id.*, at p. 785.)

Appellant claims: "The statutory scheme . . . does not . . . protect a third party when the person signing the contract [Melchiori] is not actually the manager [MIC]" of the LLC. "The statute does not provide a safe harbor to the third party if the contract is signed by . . . the manager [Melchiori] of the LLC's manager [MIC]." Appellant's claims are untenable because MIC was a legal entity and therefore could sign the Indemnity

Agreement only through the signature of a natural person.  The natural person authorized to sign on MIC's behalf was its managing member, Melchiori.  During appellate oral argument, appellant's counsel conceded that Melchiori was "the only living person in the world" who could sign on MIC's behalf.

We reject appellant's argument that it is not bound by the Indemnity Agreement because respondent failed to exercise due diligence to assure that Melchiori was in fact appellant's managing member.  Irrespective of whether respondent exercised due diligence, Melchiori's signature bound appellant under section 17157(d).

*Disposition*

The judgment is affirmed.  Respondent shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


YEGAN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.


14

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Herb Fox, Herb Fox; Reicker, Pfau, Pyle & McRoy, Timothy J. Trager, for Defendant and Appellant. Solan, Park & Robello, Kevin M. Solan; Rosenbaum & Associates, Neil Rosenbaum, for Plaintiff and Respondent.